Michael Winn LAFLEUR, Appellant,

v.

The STATE of Texas.

No. 1447–02.

Court of Criminal Appeals of Texas,
En banc.

May 21, 2003.

Harold J. Lane, Jr., Beaumont, for Appellant.

Jeffrey L. Van Horn, First Asst. State's Atty., Matthew Paul, State's Atty., Austin, for State.

Before the court en banc.

## OPINION

COCHRAN, J., delivered the opinion of the Court, joined by KELLER, P.J., and MEYERS, WOMACK, KEASLER, HERVEY, and HOLCOMB, J.J.

Concluding that our prior decision in *Davis v. State*[1] required it to do so, the court of appeals deleted the deadly weapon finding in appellant's manslaughter judgment.[2] In *Davis*, we held that "deadly weapon" language in a lesser-included manslaughter application paragraph (when a defendant is indicted for committing murder with a specific deadly weapon) is not sufficient to support a deadly weapon finding when the jury returns a guilty verdict on the lesser-included offense if the verdict form does not explicitly refer to the original indictment.[3]

■ Although we reaffirm our decision in *Polk v. State*,[4] holding that there must be an express finding of a deadly weapon when the jury is the factfinder,[5] we now conclude that our reasoning in *Davis* was flawed. Thus, we hold that courts may look to the application paragraph of a lesser-included offense to determine if the express deadly weapon allegation in that portion of the jury charge matches the deadly weapon allegation in the indictment for the charged offense. If so, the trial court may enter a deadly weapon finding in the judgment based upon the jury's verdict of guilt on the lesser-included offense.[6]

### I.

Appellant was charged with murder. The indictment alleged that he

did then and there intentionally and knowingly cause the death of an individual, namely: Keith Walker, hereafter styled the complainant, by shooting the complainant with a deadly weapon, to-wit: a firearm.

At trial, the State and defense agreed that appellant shot and killed Keith Walker with a firearm. The contested issues were

---

1. 897 S.W.2d 791 (Tex.Crim.App.1995).

2. *Lafleur v. State,* 84 S.W.3d 309 (Tex.App.-Beaumont 2002).

3. *Davis,* 897 S.W.2d at 793.

4. 693 S.W.2d 391 (Tex.Crim.App.1985).

5. *Id.* at 393.

6. We do not suggest that reference to the application paragraph is the sole method, or even a preferred method, for making a deadly weapon finding when a person is convicted of a lesser-included offense. There is much merit in Judge Price's preference for a special "deadly weapon" issue. That is a commendable practice. We hold only that a trial judge has the authority to enter a deadly weapon finding based upon express "deadly weapon" language in the application paragraph of a lesser-included offense.

whether appellant: 1) fearing for his life, shot the victim in self-defense because Mr. Walker had threatened him with a knife; and 2) recklessly or negligently, rather than intentionally or knowingly, caused the victim's death. The trial judge instructed the jury on self-defense as well as on the lesser-included offense of manslaughter. The jury charge application paragraph for manslaughter read:

> Therefore, if you believe from the evidence beyond a reasonable doubt that in Jefferson County, Texas, on or about May 31, 1998, the defendant Michael Winn Lafleur, did then and there recklessly cause the death of an individual, namely: Keith Walker, hereafter styled the complainant, by shooting complainant with a deadly weapon, to-wit: a firearm, you shall find the defendant guilty of the lesser included offense of Manslaughter.

The jury's verdict read:

> WE, THE JURY, find the defendant NOT GUILTY of Murder as charged in the indictment, but GUILTY of the lesser included offense of Manslaughter.

The jury then sentenced appellant to eight years imprisonment. The trial judge entered an affirmative finding in the written judgment that appellant used a deadly weapon.

On appeal, appellant complained that the trial judge erred in entering a deadly weapon finding. The Beaumont Court of Appeals noted that this Court had held, in *Davis v. State,* that a trial court is authorized to enter a deadly weapon finding:

> where the jury has 1) found guilt as alleged in the indictment and the deadly weapon has been specifically plead as

such using "deadly weapon" nomenclature in the indictment; 2) found guilt as alleged in the indictment but, though not specifically plead as a deadly weapon, the weapon plead is per se a deadly weapon; or 3) affirmatively answered a special issue on deadly weapon use.[7]

The court of appeals noted that neither the first nor second option was *exactly* applicable because

> [h]ere, the jury verdict does not say "guilty of manslaughter as alleged in the indictment." It could not have. There was no indictment for manslaughter; nor did there have to be. Manslaughter is a lesser-included offense of murder.[8]

The court of appeals stated that the manslaughter application paragraph included an express deadly weapon assertion, but it also noted that in *Davis,* this Court had held that similar "firearm" and "deadly weapon" language in a lesser-included manslaughter application paragraph was merely an "implied" finding, not an "express" finding.[9] The court of appeals expressed its concern about the logic of *Davis:*

> Respectfully, we question how the application paragraph's language regarding the use of the deadly weapon constitutes only an implied deadly weapon finding rather than an express finding. In following the trial court's instructions in the charge, the jury convicted the defendant of the lesser-included offense by finding that the expressly stated requirements of the application paragraph existed beyond a reasonable doubt.[10]

That is, the jury in this case could not have found appellant guilty of manslaughter

---

7. *Davis,* 897 S.W.2d at 793 (citing *Polk,* 693 S.W.2d at 396).

8. *Lafleur,* 84 S.W.3d at 312.

9. *Id.*

10. *Id.*

without also expressly deciding that he used a firearm, a deadly weapon *per se.*

Nonetheless, the court of appeals felt constrained to follow *Davis* and stated it was "required to conclude the trial court erred in including a deadly weapon finding in the judgment." [11] We granted review to re-examine the reasoning in *Davis* and *Polk.* [12]

## II.

In 1977, the Texas Legislature proposed adding a "deadly weapon" provision to article 42.12 of the Code of Criminal Procedure. This measure would have numerous legal consequences, including the fact that "where a deadly weapon has been exhibited during a commission of an offense, the parole date is figured on flat time alone without consideration of good time." [13] During that session, the Texas Department of Corrections expressed concern to the Legislature that it would be unable to determine whether a particular inmate was subject to a deadly weapon finding if there were no express "deadly weapon" language contained in the indictment or elsewhere. Thus, the Legislature wrote the bill

> so that when the trier of fact found that a deadly weapon or firearm was used in the commission of the offense, that finding would be entered on the judgment, which would then be sent with the order

of commitment. Thus, the Department of Corrections would know how to compute the defendant's time for parole purposes. [14]

The provision was added as article 42.12, Section 3f(a)(2). [15] Providing a space in the written judgment form to record the factfinder's deadly weapon finding solved the notice problem for prison authorities. That statutory provision did not, however, address the circumstances under which the trial judge should enter a deadly weapon finding in the judgment when a jury, not the judge, was the factfinder—how, for example, would a trial judge know when the jury had, in fact, found that the defendant used or exhibited a deadly weapon during the commission of the offense?

In *Polk,* this Court addressed that problem, noting that "[t]he indictment, charge, verdict and judgment" were all relevant in determining if, when, and how a jury makes a deadly weapon finding. [16] First, the Court analyzed the term "affirmative finding," and concluded that "these words taken together were intended to mean the trier of fact's *express* determination that a deadly weapon or firearm was actually used or exhibited during the commission of the offense." [17] The trial judge could not enter a deadly weapon finding simply because some evidence indicated that the defendant had used a deadly weapon and therefore the jury's general verdict might

---

11. *Id.*

12. We granted the following grounds for review:
 1) Did the court of appeals err by deleting from the trial court's judgment an affirmative finding that the defendant used a deadly weapon in the commission of the offense?
 2) Should the Court of Criminal Appeals re-examine its decisions in *Polk v. State,* 693 S.W.2d 391 (Tex.Crim.App.1985), and *Davis v. State,* 897 S.W.2d 791 (Tex.Crim.App. 1995)?

13. *Polk,* 693 S.W.2d at 393 n. 1 (quoting a bill analysis prepared by the general counsel for the Texas Department of Corrections).

14. *Id.*

15. That section has been recodified as TEX. CODE CRIM. PROC. art. 42.12, § 3g(a)(2).

16. *Id.* at 393.

17. *Id.* (emphasis in original).

*imply* that it had believed that evidence. We quoted language from *Barecky v. State*[18] to illustrate the problem with implied deadly weapon findings:

"The jury found appellant 'guilty as charged in the indictment.' The indictment contains no mention of a deadly weapon. Neither does the court's charge to the jury. Thus, the court entered its finding as to use of a deadly weapon in the absence of such an 'affirmative finding' by the appropriate trier of fact. This was improper." [19]

Thus, when neither the indictment nor the jury charge contained any "deadly weapon" language, a trial court could not enter an "implied" deadly weapon finding based solely upon its own assessment of the evidence and a general "guilty" verdict. Because the trial judge was not the factfinder, it did not have the authority to "find" implied facts that the jury did not expressly find.

That was what happened in *Polk*. In that case, the indictment alleged that Mr. Polk attempted to cause the death of the complainant by stabbing and cutting the complainant with a knife.[20] The application paragraph of the jury charge tracked the language of the indictment but failed to say anything about a deadly weapon.[21]

The verdict form, on the other hand, simply stated that the jury found Mr. Polk guilty "as charged in the indictment." Thus, none of the three possible sources of an express deadly weapon finding—the indictment, the jury charge, or the verdict form—contained any deadly weapon language. Because a knife is not a deadly weapon *per se* and Mr. Polk's jury might have concluded that this particular knife was not, in fact, a deadly weapon, there was no way for the trial judge to determine with any certainty what, exactly, the jury had found regarding Mr. Polk's use of the knife.

To assist the bench and bar, in *Polk* this Court "examine[d] how, when the jury is the trier of fact, an affirmative finding may properly be made." [22] First, "the trier of facts' verdict on the indictment may constitute an affirmative finding" when the indictment itself alleges a deadly weapon.[23] Second, sometimes "an affirmative finding will arise as a matter of law"—as in when the instrument used is a *per se* deadly weapon, such as a pistol or a firearm.[24] Third, the jury may make an affirmative finding through a deadly weapon special issue included in the jury charge.[25] After rephrasing its three major modes of making an affirmative finding,[26] this Court con-

18. 639 S.W.2d 943 (Tex.Crim.App.1982).

19. *Polk*, 693 S.W.2d at 394 (quoting *Barecky*, 639 S.W.2d at 945).

20. *Id.* at 393.

21. *Id.*

22. *Id.* at 394.

23. *Id.* In other words, the language in a verdict form, "guilty as alleged in the indictment," will support a deadly weapon finding if the indictment contains language expressly alleging that the defendant used a deadly weapon.

24. *Id.* (stating that "[i]f the trier of fact finds that a pistol has been used in the commission of the offense under the circumstances described above, then it has found that a deadly weapon has been used since a pistol is a deadly weapon per se").

25. *Id.* at 394 n. 3 (this Court stated that "[w]hile not mandating that the issue be submitted at the punishment phase of the trial, Art. 37.07, § 1(a) seems to indicate that this is the better practice").

26. The *Polk* Court rephrased the three modes as follows:

1) the deadly weapon or firearm has been *specifically* pled *as such* (using the nomenclature "deadly weapon") in the indictment (Applies where the verdict reads "guilty as

cluded: "[w]e will no longer look to the facts of the case to permit an 'implied' affirmative finding as the court of appeals, relying on prior case law, did in this case."[27] The moral of *Polk* is that courts should not wade through trial evidence to divine whether a jury did or did not find, beyond a reasonable doubt, that a defendant used a deadly weapon in the commission of the offense.

On the very same day that this Court decided *Polk*, it also decided another deadly weapon case, *Travelstead v. State*.[28] In that case, the indictment charged the defendant with capital murder of the complainant "by shooting him with a gun" in the course of committing robbery.[29] The verdict form read: "We the jury, find the defendant 'Guilty of Murder' as charged in the indictment."[30] So far, so good under *Ex parte Moser*,[31] said this Court, but here the evidence and the application paragraph of the jury charge showed that the defendant was guilty only as a party to the murder, not as the shooter himself.[32] This Court in *Travelstead* thus held that deadly

weapon findings must be personal to the particular defendant. "When a defendant is a party, as defined in Sections 7.01 and 7.02 of the Penal Code, to the use or exhibition of a deadly weapon, there must be a specific finding by the trier of facts that the defendant himself used or exhibited the deadly weapon."[33] Thus, under *Travelstead*, courts were to determine whether a defendant *personally* used the deadly weapon alleged in the indictment by looking to the application paragraph of the jury charge to decide whether it included a parties charge. The application paragraph was crucial to that determination.

Neither *Polk* nor *Travelstead*, however, addressed the situation in which a defendant is indicted for one offense using a deadly weapon, but found guilty of a lesser-included offense, also using a deadly weapon. That issue arose in *Davis v. State*.[34] And that, as the Beaumont Court of Appeals so politely suggests, is where we went wrong. In *Davis*, the defendant was charged with murder by shooting the

---

charged in the indictment." *See Barecky, supra* );
2) where not specifically plead in "1)" above as a deadly weapon or firearm, the weapon pled is per se a deadly weapon or a firearm; or,
3) a special issue is submitted and answered affirmatively.
*Id.* at 396.

**27.** *Id.*

**28.** 693 S.W.2d 400 (Tex.Crim.App.1985).

**29.** *Id.* at 401.

**30.** *Id.* (this Court did not explain the discrepancy between the indictment for capital murder and the verdict for murder as quoted above).

**31.** 602 S.W.2d 530, 533 (Tex.Crim.App.1980) (holding that an allegation that the defendant shot the complaint "with a pistol" was sufficient to support a deadly weapon finding).

**32.** 693 S.W.2d at 401–02.

**33.** *Id.* at 402. The Code of Criminal Procedure was amended in 1991 to permit the entry of an affirmative finding based on a determination that a party to the offense knew that a deadly weapon would be used or exhibited during the commission of the offense. Act of May 25, 1991, 72nd Leg., R.S. ch. 541, § 1, 1991 Tex. Gen. Laws 1876, 1876–77 (current version at TEX.CODE CRIM. PROC art. 42.12, § 3g(a)(2)). Thus, *Travelstead* has, to some extent, been superseded by statute. *See Bias v. State*, 937 S.W.2d 141, 145 (Tex.App.-Houston [1st Dist.] 1997, no pet.); *see also Sarmiento v. State*, 93 S.W.3d 566, 568 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (stating that "[t]he Legislature effectively overruled *Travelstead* . . . in 1991").

**34.** 897 S.W.2d 791 (Tex.Crim.App.1995).

complainant with a firearm, a deadly weapon *per se*, but convicted of voluntary manslaughter. The court of appeals had held that the jury made an "express" finding that the defendant used a deadly weapon because the manslaughter application paragraph explicitly required such a finding.[35] Nevertheless, this Court held that the jury charge was not sufficient because the verdict form itself "made no reference to a deadly weapon nor did it refer back to the indictment." [36]

In other words, under the reasoning of *Travelstead* and *Davis,* courts *should* look to the application paragraph to overturn a deadly weapon finding if that paragraph includes a parties charge, but courts *should not* look to that same application paragraph to uphold a deadly weapon finding. This is peculiar logic. Either the application paragraph is or is not an appropriate source for the trial court to consult in determining whether the jury made an "express" deadly weapon finding pertinent to the particular defendant in its verdict. *Polk* reasoned that the jury charge *was* relevant; *Davis* said it was not. One of them is wrong.

First, of course, *Polk* simply did not address the issue of a deadly weapon finding in the context of a lesser-included offense. Thus, this Court was not thinking in that context, and its three modes of addressing a deadly weapon finding simply did not take into account lesser-included offenses. Obviously, neither of the first two modes could be *exactly* applicable to a guilty verdict on a lesser-included offense because, as the Beaumont Court of Appeals so aptly points out, the verdict form will *never* read "guilty as charged in the indictment."

Second, if the jurisprudential goal is to avoid implied or uncertain deadly weapon findings in favor of clear and express findings, courts should not be required to consult two different documents (*i.e.,* the verdict form in the jury charge and the indictment) if one document will suffice. If the jury's express deadly weapon finding could be more easily verified by simply consulting the application paragraph and the verdict, both of which are contained in the same jury charge document, so much the better. Clearly, neither the "guilty as charged" verdict form nor the indictment are crucial to an express deadly weapon finding because the third alternative set out in *Polk* is a special issue submitted in the jury charge, and that special issue refers to neither the "guilty as charged" verdict form nor the indictment.

---

**35.** *Davis v. State,* 880 S.W.2d 870, 872–73 (Tex.App.-Fort Worth 1994).

**36.** 897 S.W.2d at 793. This Court explained that "the Legislature's requirement for an 'express' finding was 'meant to save us all from sinking ever deeper into the quagmire of whether differing indictment/verdict/fact situations amounted to 'implied' findings or not." *Id.* (quoting *Polk,* 693 S.W.2d at 396). The Court relied upon *Easterling v. State,* 710 S.W.2d 569 (Tex.Crim.App.1986) and *Ex parte Flannery,* 736 S.W.2d 652 (Tex.Crim.App. 1987), for its conclusion that a deadly weapon assertion in the jury charge application paragraph of a lesser-included offense is only an "implied" finding, not an express one. *Id.* at 793–94. Neither of those cases, however, are apposite. In *Easterling,* the indictment did not include the allegation of a deadly weapon. 710 S.W.2d at 581. The indictment in *Davis* did. In *Flannery,* the indictment charged the defendant with shooting the defendant with a shotgun which, at that time, was not a deadly weapon *per se.* 736 S.W.2d at 655 (Teague, J., concurring and dissenting). Similarly, the application paragraph contained no "deadly weapon" language, only a reference to a "shotgun." In *Davis,* however, the defendant was charged with "shooting [the complainant] with a deadly weapon, to-wit: a firearm[.]" 897 S.W.2d at 793.

We therefore conclude that *Polk's* purpose of ensuring an "express finding" of a deadly weapon is satisfied by looking to the explicit requirements of the application paragraph as well as to the indictment and verdict form.[37] If the jury's verdict of a lesser-included offense is based upon an application paragraph that explicitly and expressly requires the jury to find that the defendant used a deadly weapon in the commission of the offense, the underlying purpose of *Polk* has been achieved. This conclusion is in accord with our earlier holdings in *Ex parte McLemore*[38] and *Ex parte Bracelet*,[39] which had followed the original mandate of *Polk* by stating that "the indictment, charge, verdict, and judgment" are all relevant sources to consider in deciding whether a jury has made an "express" deadly weapon finding.[40]

 Our holding in *Davis* did not serve *Polk's* underlying purpose of ensuring that the jury make an "express" deadly weapon finding. Instead, it exalted form over substance to no discernible jurisprudential purpose. It did not explain why

---

**37.** We note that the Beaumont Court of Appeals' sister court, the Dallas Court of Appeals, has attempted to obey both the literal words of *Davis*, as well as the spirit of *Polk*. It has held that, when a jury finds a defendant guilty of a lesser-included offense and the indictment alleged the use of a deadly weapon, *any* reference to the indictment in the verdict form is an "express" deadly weapon finding. *See, e.g., Garza v. State,* 912 S.W.2d 835, 836 (Tex.App.-Dallas 1995, no pet.). Under the reasoning in *Garza,* the verdict form in this case *did* expressly refer to the indictment by finding the defendant not guilty of murder "as charged in the indictment," but then stating, in the very same sentence, that the jury found that the defendant "GUILTY of the lesser included offense of Manslaughter." Obviously, the phrase "lesser included offense" means lesser-included offense of the offense charged in the indictment—murder committed with a deadly weapon. In the present case, however, the State conceded error to the Beaumont Court of Appeals and did not make this argument. Although it is a logical rationale for upholding the "express" deadly weapon finding in this case, the reasoning adopted by the Dallas Court of Appeals is more convoluted than necessary given the particular facts in this case.

**38.** 717 S.W.2d 634 (Tex.Crim.App.1986). In *McLemore* this Court reasoned that, although he had been charged with murder,

> [t]he jury found applicant guilty of the lesser included offense of voluntary manslaughter. That verdict means that the jury believed that applicant caused the death of an individual. In both the indictment and the application portion of the court's charge,

the instrumentality of death was a handgun. Therefore, the jury found that a handgun was used. An affirmative finding of the use of a deadly weapon was made by the jury. *Id.* at 636.

**39.** 702 S.W.2d 194 (Tex.Crim.App.1986). In *Bracelet,* this Court unanimously concluded that the jury's verdict of guilt of the lesser-included offense of manslaughter included an express finding of the use of a deadly weapon based upon the language of the application paragraph which included the phrase "by shooting the complainant with a firearm," and tracked the same language from the indictment. This court concluded: "in both the indictment and the application portion of the trial court's charge the weapon was stated to be a firearm[,]" thus "the affirmative finding made was proper in the circumstances of this cause." *Id.* at 196.

**40.** *McLemore* and *Bracelet* were overruled in *Ex parte Flannery* "[t]o the extent they are inconsistent with Polk[.]" 736 S.W.2d at 653. As explained in note 35 *supra*, however, there was no express deadly weapon language in the indictment, application paragraph, or verdict form in *Flannery*. *Flannery* was correctly decided, but it unnecessarily mowed down *McLemore* and *Bracelet* in its wake. *See Flannery,* 736 S.W.2d at 655 (Teague, J., concurring and dissenting) (arguing that overruling *Ex parte Bracelet* "is both unnecessary and ill advised, and such act, I predict, will cause this Court in the future to once again develop a legal stomach ache"). Judge Teague was right; *McLemore* and *Bracelet* are not inconsistent with the purpose of *Polk.* Today, they rise like Phoenix from the ashes.

the verdict form is a proper portion of the jury charge to consult merely for a cross-reference to the magic words "in the indictment," but the application paragraph of that same jury charge is not an appropriate portion to consult for the express deadly weapon finding. We therefore overrule *Davis* to the extent that it would prohibit courts from referring to the application paragraph of the jury charge to determine if the jury has made an express deadly weapon finding.[41]

## III.

■ In this case, the combination of: 1) the indictment which alleged "a deadly weapon: to wit, a firearm"; 2) the jury charge application paragraph of the lesser-included offense of manslaughter that required a finding, beyond a reasonable doubt, that the appellant used "a deadly weapon: to-wit, a firearm"; and 3) the jury's verdict, that appellant was guilty of the lesser-included offense of manslaughter, contained an express finding that appellant used a firearm, which is a deadly weapon *per se*, to cause the complainant's death. Therefore, the trial court did not err in entering an affirmative finding of a deadly weapon in its judgment. We reverse the judgment of the court of appeals,

reinstate the deadly weapon finding, and affirm the trial court's judgment.

KELLER, P.J., filed a concurring opinion.

JOHNSON, J., filed a concurring opinion.

PRICE, J., filed a dissenting opinion.

KELLER, P.J., filed a concurring opinion.

I write separately to respond to the dissent's discussion of *stare decisis* and of *Travelstead v. State*.[1] Citing *Busby v. State*, the dissent contends that *stare decisis* concerns are especially compelling in the present case because it involves the judicial construction of a legislative enactment on which the parties rely for guidance.[2] In *Busby*, we explained, "The interests underlying the doctrine of *stare decisis* are at their height for judicial interpretations of legislative enactments upon which parties rely for guidance in attempting to conform to those legislative enactments."[3] Although the present case involves the interpretation of a legislative enactment, it does not involve reliance. Advance notice of the Court's holding in the present case would have changed noth-

---

**41.** This Court does not lightly overrule precedent. As we stated in *Paulson v. State,* 28 S.W.3d 570 (Tex.Crim.App.2000):

> We follow the doctrine of *stare decisis* to promote judicial efficiency and consistency, encourage reliance on judicial decisions, and contribute to the integrity of the judicial process. But if we conclude that one of our previous decisions was poorly reasoned or is unworkable, we do not achieve these goals by continuing to follow it.

*Id.* at 571–72 (footnotes omitted). As discussed above, *Davis* does not promote the goal expressed in *Polk* of ensuring that deadly weapon affirmative findings are "express" rather than "implied." Instead, it exalts form over substance, and places reliance upon an abstract phrase in the verdict form rather

than words of substance in the indictment and application paragraph. As respectfully noted by the Beaumont court, it is not a rule based on logic, but rather on magic language.

Furthermore, in overruling *Davis*, we are resurrecting better-reasoned prior precedent. *See* note 39 *supra.* It was the failure to follow *stare decisis* in *Flannery* and *Davis* which was problematic. Thus, the appropriate judicial course is to return to that well-reasoned precedent, rejecting the interim, poorly-reasoned, decisions.

**1.** 693 S.W.2d 400 (Tex.Crim.App.1985).

**2.** Dissent at 103.

**3.** 990 S.W.2d 263, 267 (Tex.Crim.App.1999).

ing for appellant (or any defendant in his position): no trial strategy could have prevented the assessment of a deadly weapon finding. By contrast, the rule at issue in *Busby*—concerning controverting affidavits to a motion to change venue—was relied upon by the State in submitting its affidavits: advanced notice of a different rule might have caused the State to proceed differently in response to the defendant's motion.[4]

*Stare decisis* concerns are also strong when the Legislature *reenacts* a statute without change after a judicial decision construing the statute—the inference being that the Legislature must have intended that the judicial construction continue to apply.[5] The inference is considerably weaker when the Legislature is merely silent after a judicial construction.[6] "[L]egislative inaction does not necessarily equal legislative approval. The Legislature is not required to repair our error, nor are we forbidden to do so ourselves."[7]

The dissent further contends that the Court errs to rely upon *Travelstead* because the Legislature effectively overruled that decision by amending Article 42.12 of the Texas Code of Criminal Procedure. But there were two necessary holdings in *Travelstead:* (1) that one could look to the application paragraph of the jury charge to determine whether the jury made an affirmative deadly weapon finding,[8] and (2) under the statute, deadly weapon findings were personal to the defendant.[9] Flowing from these two holdings is Travelstead's conclusion that sole reliance upon a parties theory of liability in the application paragraph negated any inference that the jury made a deadly weapon finding.[10] In amending Article 42.12 § 3g(a)(2), the Legislature overturned the second holding, but not the first. Moreover, the amendment did not completely abrogate *Travelstead* because a deadly weapon finding can be made for a party who does not use or exhibit a deadly weapon only if the party "knew" that a deadly weapon would be used or exhibited.[11] Presumably, if the jury instructions charge only on party liability and fail to contain an averment concerning the defendant's knowledge that a deadly weapon would be used or exhibited (or that the defendant himself used or exhibited a deadly weapon), then *Travelstead* would still bar a deadly weapon finding. Thus, our jurisprudence still contains a conflict between *Travelstead* and *Davis v. State.*[12]

With these comments, I join the Court's opinion.

JOHNSON, J., filed a concurring opinion.

I agree with the dissent that the far better practice is to include in the verdict form appropriate wording about the use of a deadly weapon. However, because we assume that a jury follows the instructions given to it in the jury charge, under the facts of this case the jury explicitly found the use of a deadly weapon. I concur in the judgment of the Court.

4. *Id.*

5. *State v. Medrano*, 67 S.W.3d 892, 902 (Tex. Crim.App.2002).

6. *Id.*

7. *Id.* at 903.

8. 693 S.W.2d at 401.

9. *Id.* at 402.

10. *Id.*

11. Article 42.12, § 3g(a)(2).

12. 897 S.W.2d 791 (Tex.Crim.App.1995).

PRICE, J., filed a dissenting opinion.

Stare decisis is the means by which we ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion. *Vasquez v.Hillery,* 474 U.S. 254, 265, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986). The United States Supreme Court reiterated the policies behind *stare decisis.* "*Stare decisis* promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

*Stare decisis* strongly urges judges not to reconsider precedent. *Seminole Tribe v. Florida,* 517 U.S. 44, 63, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). However, overruling precedent in Texas is acceptable under certain circumstances. Some factors that support overruling precedent are: 1) when the original rule is flawed from the outset; 2) when older precedent conflicts with a newer decision that is found to be more soundly reasoned; and 3) when the rule consistently creates unjust results or places unnecessary burdens upon the system. *Hammock v. State,* 46 S.W.3d 889, 892–93 (Tex.Crim.App.2001).

In *Davis v. State,* a majority of this Court, including two judges currently sitting on this Court, held that a trial court was not authorized to enter a deadly weapon affirmative finding because there was no deadly weapon special issue included in either the guilt or punishment jury charge, and the voluntary manslaughter verdict mentioned neither a deadly weapon nor the indictment. 897 S.W.2d 791, 793 (Tex. Crim.App.1995). Yet, today, a majority of this Court now finds that the reasoning in *Davis* was flawed.

The majority in this case, justifies overruling Davis by comparing it to *Travel-*stead. In *Travelstead,* the defendant was convicted of murder under the law of parties, and an affirmative finding of the use or exhibition of a deadly weapon was included in the judgment. *Travelstead v. State,* 693 S.W.2d 400, 401 (Tex.Crim.App. 1985). Because the defendant was not the triggerman, he argued to this Court that it was inappropriate for the trial court to make an affirmative finding in his case. This Court agreed and stated:

> We find that the phrase "the defendant used or exhibited a deadly weapon" implies that the defendant, himself, use or exhibit a deadly weapon during the commission of a felony or flight therefrom. When a defendant is a party ... to the use or exhibition of a deadly weapon, there must be a specific finding by the trier of facts that the defendant himself used or exhibited the deadly weapon.

*Id.* at 402.

Therefore, as the majority reasons, courts were to determine whether a defendant personally used the deadly weapon alleged in the indictment by looking to the application paragraph of the jury charge to decide whether it included a parties charge. The application paragraph was crucial to that determination.

In its comparison of the two cases, the majority states that the courts should look to the application paragraph to overturn a deadly weapon finding if that paragraph includes a parties charge, but courts should not look to that same application paragraph to uphold a deadly weapon finding. If that were the law today, the majority's reasoning might be persuasive.

In 1991, the Legislature effectively overruled *Travelstead* when it amended Article 42.12 of the Texas Code of Criminal Procedure to provide for an affirmative finding of a deadly weapon if the defendant used or exhibited a deadly weapon or was a

party to the offense and knew that a deadly weapon would be used or exhibited. Tex.Code Crim. Proc. art. 42.12 § 3g(a)(2). Therefore, today, the application paragraph is *not* an appropriate source for the trial court to consult in determining whether the jury made an express deadly weapon finding pertinent to the particular defendant in its verdict.

In its next reason to overrule *Davis,* the majority states that this Court's holding in *Davis* did not serve *Polk's* underlying purpose of ensuring that the jury make an express deadly weapon finding. Instead, it exalted form over substance to no discernible purpose.

The purpose is obvious. This Court defined "affirmative finding" to mean "the trier of fact's express determination that a deadly weapon or firearm was actually used or exhibited during the commission of the offense." *Polk v. State,* 693 S.W.2d 391, 393 (Tex.Crim.App.1985). This Court specifically noted that an implied finding is not an express finding as is required by statute, and that the Legislature's requirement for an express finding was meant to save all of us from sinking ever deeper into the quagmire of whether differing indictment/verdict/fact situations amounted to implied findings or not. *Id.* at 396.

In *Travelstead,* the majority stated that when the issue of punishment is before the jury, the trial court should submit a special issue to the jury regarding an affirmative finding of a deadly weapon. Much confusion would be eliminated if this procedure was followed. *Travelstead v. State,* 693 S.W.2d 400, 402 (Tex.Crim.App.1985).

Since *Polk,* it has been very well-settled that in a jury trial, a trial court is authorized to enter a deadly weapon affirmative finding in three situations: where the jury has 1) found guilt as alleged in the indictment and the deadly weapon has been specifically plead as such using deadly weapon nomenclature in the indictment; 2) found guilt as alleged in the indictment but, though not specifically plead as a deadly weapon, the weapon plead is per se a deadly weapon; or 3) affirmatively answered a special issue on deadly weapon use. *Polk,* 693 S.W.2d at 396.

The majority believes that this Court did not take into account lesser-included offenses when it set out the three modes of addressing a deadly weapon finding. That may be true but, when looking at these three modes, it is obvious that the third mode, affirmatively answering a special issue, is the proper avenue to take when dealing with a lesser-included offense.

The majority also states that courts should not be required to consult two different documents (i.e., the verdict form in the jury charge and the indictment) if one document will suffice. What the majority is overlooking is that its holding today will only make that situation worse. The majority would have the appellate courts review every indictment, every verdict form and every application paragraph in the jury charges to locate an affirmative finding that a deadly weapon was used or exhibited during the offense of conviction.

The majority believes that the moral of *Polk* is that courts should not have to wade through trial evidence to divine whether a jury did or did not find, beyond a reasonable doubt, that a defendant used a deadly weapon in the commission of the offense. Yet, the majority would have the courts look through numerous documents to locate the deadly weapon finding. Would it not be easier to only have to consult the verdict form and sometimes the indictment when the verdict relates back? Would it not be more beneficial to the system if the courts knew exactly where to go to find this information?

The interest in *stare decisis* is even more compelling when the rule of law involves a judicial interpretation of a legislative enactment on which parties rely for guidance. *Busby v. State*, 990 S.W.2d 263, 267 (Tex.Crim.App.1999). "When the legislature meets, after a particular statute has been judicially construed without changing the statute, we presume the legislature intended the same construction should continue to be applied to that statute." *Ibid.* (quoting *Marin v. State*, 891 S.W.2d 267, 271–72 (Tex.Crim.App.1994)). The Legislature has met many times since *Davis* and *Travelstead* were decided and *Travelstead* was the only case overruled.

Upon close analysis, the majority's attempt to justify its holding is lacking both logic and skill. The procedure in *Davis* is simple and beneficial to the organization of the criminal justice system. Only one sentence needs to be added to the verdict form. The deadly weapon finding will be easy to find and there will be no confusion on whether there was an express finding. The trial court should be responsible for having a special issue in the jury charge relating to a deadly weapon finding.

Our law requires that "the judge ... shall ... deliver to the jury ... a written charge distinctly setting forth the law applicable to the case...." Tex.Code Crim. Proc. art. 36.14. In *Posey v. State*, Judge Womack in his concurring opinion stated:

> In our system the parties are adversaries; the judge is not. The parties may make strategic decisions whether to present evidence, and the evidence will determine what law must be applied. To that extent the adversaries' decisions affect the court's charge. But the charge is the judge's. It is not under the control of the adversaries. When the evidence is closed, the judge's duty to charge on the applicable law is no longer subject to the strategic decisions of the parties.

966 S.W.2d 57, 69 (Tex.Crim.App.1998).

Without any basis for doing so, I believe that the majority of this Court is departing from the doctrine of *stare decisis* in its holding. I would affirm the judgment of the Court of Appeals and strike the affirmative weapon finding from the judgment. I respectfully dissent.