

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-1634-07

**LINDSEY ALYN CRUMPTON, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE FIFTH COURT OF APPEALS
DALLAS COUNTY**

**Meyers, J.,** *filed a dissenting opinion.*

### DISSENTING OPINION

The issue before the Court is whether an express deadly-weapon finding exists when a defendant is found guilty of a lesser-included offense and the jury has seen a deadly-weapon clause in the indictment for the greater offense and in the application paragraph for the greater offense, but never in association with the lesser-included offense (including the application paragraph for the lesser-included offense).

Without examining any of this Court's precedent on the issue (*Lafleur v. State*, 106 S.W.3d 91 (Tex. Crim. App. 2003); *Polk v. State*, 693 S.W.2d 391 (Tex. Crim. App. 1985)), the majority concludes that the jury made an express deadly-weapon finding because the indictment for the greater offense mentioned a deadly weapon. The majority has conducted a bookend, skeletal analysis, quoting the indictment and the verdict form, but ignoring the application paragraphs entirely. This is peculiar considering that Appellant's petition to this Court and our precedent both emphasize the critical importance of the application paragraph content. *Id.* To simply connect the indictment to the verdict, as the majority does, and skip over the intermediate material that the jury considered, yields an incomplete analysis.

Furthermore, I am clueless as to how *Blount v. State*, 257 S.W.3d 712 (Tex. Crim. App. 2008), affects the disposition of this case. Somehow this Petition for Discretionary Review has been turned on its head. Appellant does not claim that she lacked notice of the deadly-weapon issue, but rather that the jury did not make an express deadly-weapon finding in association with her conviction for a lesser-included offense.

This is a complicated question which requires a deeper analysis of the jury charge herein and controlling case law. Because I would decide this case differently (*see* Exhibit A), I respectfully dissent.

## EXHIBIT A

Appellant, Lindsey Alyn Crumpton, was charged with manslaughter. The jury

charge at the guilt stage included an application paragraph on the lesser-included offense of criminally negligent homicide. The jury found Appellant guilty of criminally negligent homicide and assessed punishment at ten years' confinement. Appellant appealed, arguing that because the jury never made an express deadly-weapon finding, her punishment range was improperly enhanced to a third degree felony. The court of appeals affirmed the trial court, concluding that the jury had made an express deadly-weapon finding, and that therefore, Appellant's punishment range was properly calculated. We granted review to evaluate whether the jury made an express deadly-weapon finding. I would reverse and remand.

## I.     Facts

While driving in her Ford Explorer southbound on Interstate 35, Appellant crossed the median into northbound traffic and crashed into a Chevrolet Impala. The driver of that car died after sustaining blunt force injuries in the wreck. The officer who arrived at the scene, Bryan Dorsey, checked both drivers for consciousness, extinguished a fire in the deceased's car, and asked basic questions of Appellant. When he began to walk away from Appellant, she grabbed his shoulder, pulled him back toward her, and told him that she was attempting suicide when she drove across the median. Appellant later repeated this statement to one of the responding paramedics, Jared Karr, on the ambulance ride to the hospital. In response, Karr asked if she meant that the wreck was on purpose, and Appellant confirmed that it was. Appellant also informed Karr that prior to driving, she

had taken twenty ibuprofen, four Tylenol, and six Benedryl. A second paramedic treating Appellant in the ambulance, Rusty Lee Johnson, asked Appellant if she had crashed on purpose, and she responded, "Yes." Johnson asked her again to make sure he heard correctly, and she confirmed that she had intended to crash her car. Appellant testified that while she intended to commit suicide by flipping her car on the highway, she did not intend to crash into the deceased's car.

## II.     The indictment, jury charge, and judgment

### A.     Indictment

The indictment charged manslaughter and read:

> Defendant . . . did recklessly cause the death of an individual, [the deceased], hereinafter called complainant, by driving her motor vehicle, a deadly weapon, off of the highway, causing her motor vehicle to move into the opposing lane of traffic and strike and collide with the complainant's motor vehicle, against the peace and dignity of the State.

### B.     Jury charge–application paragraph at guilt

The application paragraph in the jury charge on the lesser-included offense of criminally negligent homicide read:

> Now bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt, that on or about November 9, 2004, in Dallas County, Texas, the defendant, caused the death of [the deceased] by criminal negligence, then you will find the defendant guilty of criminally negligent homicide as included in the indictment.

### C.     Jury charge–verdict form at guilt

The jury found Appellant guilty of the lesser-included offense of criminally

negligent homicide. The verdict form read:

> We, the jury, find the defendant guilty of criminally negligent homicide, as included in the indictment.

**D. Jury charge–verdict form at punishment**

The verdict form at punishment, in which the jury assessed punishment at ten years' confinement, defined the sentencing range as two to ten years. Criminally negligent homicide is categorized as a state jail felony, which is punishable by confinement for a term between 180 days and two years, with the option of a fine not to exceed $10,000. TEX. PENAL CODE ANN. §§ 12.35, 19.05 (Vernon 2003). However, section 12.35(c) provides that "An individual adjudged guilty of a state jail felony shall be punished for a third degree felony" if at the trial it was shown that "a deadly weapon . . . was used or exhibited during the commission of the offense . . . and that the individual used or exhibited the deadly weapon . . . ." TEX. PENAL CODE ANN. § 12.35(c) (Vernon 2003). The punishment for a third degree felony, as defined by section 12.34, is a range of two to ten years' confinement, with the option of a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.34 (Vernon 2003). Therefore, Appellant received a punishment correlative to a third degree felony.

**E. Judgment**

The trial judge entered a deadly-weapon affirmative finding in the judgment.

**III. Appeal**

At the Fifth Court of Appeals, Appellant asserted the following two arguments: (1)

The jury never made an express finding of a deadly weapon because the words "deadly weapon" did not appear in the jury charge in association with the lesser-included offense, and although "deadly weapon" did appear in the indictment, Appellant was not convicted of the charge alleged in the indictment; and (2) because there was no express finding of a deadly weapon, the punishment range was improperly enhanced from a state jail felony to a third degree felony.

The court of appeals concluded that because the application paragraph and the verdict form referred to the indictment, which included deadly-weapon language, the jury made an express finding that a deadly weapon was used during the commission of the offense. *Crumpton v. State*, No. 05-06-01673-CR, 2007 Tex. App. LEXIS 7089, at \*14 (Tex. App.–Dallas Aug. 31, 2007, pet. granted) (not designated for publication). The resolution of the first issue determined the resolution of the second. Because the court concluded that the jury did make an express deadly-weapon finding, Appellant's punishment range could be properly enhanced from a state jail felony to a third degree felony. *Id*. at \*16. Appellant presented the same two issues to this Court.

**IV.   Whether the trial court properly entered a deadly-weapon affirmative finding in the judgment based upon an express finding from the jury that a deadly weapon was used during the commission of the offense**

**A.   Appellant's argument**

Appellant's first issue pertains to the deadly-weapon affirmative finding in the

judgment.[1] She argues that the jury charge did not include a deadly-weapon clause related to the lesser-included offense, so therefore, the jury never made an express deadly-weapon finding. Appellant explains that the language of the indictment cannot compensate for the inadequacies of the jury charge because she was not convicted of the offense in the indictment.

**B.      *Polk***

We confirmed the importance of an express finding in *Polk* and stated that no longer could "the facts of the case . . . permit an 'implied' affirmative finding." *Polk*, 693 S.W.2d at 396. *Polk* outlined three circumstances indicative of an express deadly-weapon finding.

> Where the jury is the trier of fact, the trial court may not properly enter that they have made an affirmative finding concerning the defendant's use or exhibition of a deadly weapon or firearm during the commission of the offense unless:
> 1) the deadly weapon or firearm has been *specifically* pled *as such* (using the nomenclature "deadly weapon") in the indictment (Applies where the verdict reads "guilty as charged in the indictment" (citation omitted));
> 2) where not specifically pled in "1)" above as a deadly weapon or firearm, the weapon pled is per se a deadly weapon or a firearm; or,
> 3) a special issue is submitted and answered affirmatively.

*Id*.

---

[1]Both "express" and "affirmative" may be used to describe the deadly-weapon finding at issue. We said in *Polk v. State*, 693 S.W.2d 391, 393 (Tex. Crim. App. 1985), that an "affirmative finding" means "the trier of fact's *express* determination that a deadly weapon . . . was actually used or exhibited during the commission of the offense." The task of creating an affirmative finding is two-fold: the fact finder, the jury in this case, makes an express determination as to the use of a deadly weapon, and then the trial court judge enters the deadly-weapon affirmative finding in the judgment.

In *Polk*, one offense–attempted murder–remained consistent throughout the case, from the indictment through the judgment. *Id.* at 393. However, when a defendant is convicted of a lesser-included offense, *Polk*'s first basis for an express finding is not applicable; the verdict form will not read "guilty as charged in the indictment" because the defendant is not found guilty of the offense in the indictment. In *Lafleur v. State*, 106 S.W.3d 91, 92 (Tex. Crim. App. 2003), we reaffirmed *Polk*, but acknowledged the need to adapt its analysis to accommodate the lesser-included offense scenario.

**C.     *Lafleur***

In *Lafleur*, the indictment charging murder, the application paragraph on the lesser-included offense of manslaughter, and the judgment of conviction for manslaughter all featured a deadly-weapon clause. *Id.* at 92-93. However, the verdict form did not mention a deadly weapon, and the appellant argued that the trial judge erred by entering a deadly-weapon finding in the judgment when the jury's verdict had not mentioned the use of a deadly weapon. *Id.* at 93.

We concluded that the indictment, the application paragraph, and the verdict form could all be considered when detecting an express finding. *Id.* at 98. The absence of the words "deadly weapon" in the verdict form did not rule out an express finding because the manslaughter application paragraph re-introduced the deadly-weapon allegation to the jury in the new context of the lesser-included offense. Our holding read:

> [C]ourts may look to the application paragraph of a lesser-included offense to determine if the express deadly[-]weapon allegation in that portion of the jury

charge matches the deadly[-]weapon allegation in the indictment for the charged offense.  If so, the trial court may enter a deadly[-]weapon finding in the judgment based upon the jury's verdict of guilt on the lesser-included offense.

*Id.* at 92.

The significant distinction between *Lafleur* and the case at hand is the language of the application paragraph on the lesser-included offense.  The *Lafleur* application paragraph read, in relevant part: "the defendant Michael Winn Lafleur, did then and there recklessly cause the death of an individual . . . by shooting complainant with a deadly weapon, to-wit: a firearm . . . ."  *Id.* at 93.  In Appellant's case, there is no mention of a deadly weapon in the application paragraph for the lesser-included offense; the application paragraph and verdict form merely refer back to the indictment by stating, "as included in the indictment."  The following chart summarizes the use of "deadly weapon" in *Lafleur* and in the case at hand:

| | Did "deadly weapon" appear in ↓: | *Lafleur* | *Crumpton* |
|---|---|---|---|
| | Indictment charging greater offense | Yes | Yes |
| Jury Charge | Application paragraph on lesser-included offense | Yes | No |
| | Verdict form in which jury finds defendant guilty of lesser-included offense | No | No |
| | Judgment of conviction | Yes | Yes |

D.    **Analysis**

We must decide whether our holding in *Lafleur* can be expanded to allow an

express finding when both the application paragraph and the verdict form lack a deadly-weapon clause. In other words, can we allow the indictment to carry the deadly-weapon language through to the judgment when the defendant is ultimately convicted of a lesser-included offense, not the offense in the indictment?

The State asks us to hold that "a jury makes an express deadly[-]weapon finding where the verdict form or the application paragraph on the lesser-included offense specifically refers to the indictment, and the indictment includes a deadly[-]weapon allegation." But I find that this proposal renders an express finding too dependent upon the indictment for the greater offense.[2] For the lesser-included offense context, I conclude that the indictment cannot be the only documentation of a deadly weapon presented to the jury before the judgment. Here, as in *Polk*, "there was no way for the trial judge to determine with any certainty what, exactly, the jury had found regarding" a deadly weapon. *Id*. at 95.

1.      **Simply stating "as included in the indictment" in either the application paragraph or the verdict form will not suffice to produce an express finding**

First, to adopt the State's suggestion, where a single reference back to the indictment can constitute an express finding, would be inconsistent with our reasoning in

---

[2]This would not be a problem if the conviction were not for a lesser-included offense; *Polk* specifically endorsed a reference to the indictment in a verdict form. *Polk*, 693 S.W.2d at 396. But importantly, that was when the reference in the verdict form could read "as charged in the indictment," because the offense remained the same from indictment to judgment. *Id.* When a defendant is found guilty of a lesser-included offense, the significance of the indictment's language is necessarily diluted, and an application paragraph is needed to inform the jury of a different offense.

*Lafleur*. There, we recognized the importance of repeating "deadly weapon" in the application paragraph for the lesser-included offense. *Id.* at 92. Unlike *Lafleur*'s jury charge, this jury charge did not "explicitly and expressly require[] the jury to find that the defendant used a deadly weapon in the commission of the offense." *Id.* at 98. And for that reason, it falls below the *Lafleur* standard.

To say that the jury might possibly see mention of a deadly weapon only in connection with an offense of which the defendant was not found guilty presents too tenuous a connection between the indictment and the judgment. In light of *Polk*, I choose to give an *express* finding its plain meaning and require explicit deadly-weapon language to be seen by the jury in connection with the offense it found the defendant guilty of committing.

2. **Including a deadly-weapon clause in the application paragraph for the greater offense highlights the absence of that clause in the application paragraph for the lesser-included offense**

Additionally, the absence of a deadly-weapon clause in the application paragraph for the lesser-included offense is conspicuous given the presence of that clause in the immediately preceding application paragraph for the greater offense. If "as included in the indictment" were meant to suffice as a means to preserve the deadly-weapon allegation for the lesser-included offense, then why would the more potent "as charged in the indictment" not suffice to preserve the deadly-weapon allegation for the greater offense? It would be difficult to say that "as included in the indictment" secured

consideration of the indictment's deadly-weapon clause, when "as charged in the indictment" necessitated the additional support of repeating the deadly-weapon clause: "by driving her motor vehicle, a deadly weapon." In other words, the inclusion of the deadly-weapon language in the application paragraph for the greater offense suggests that the omission of such language from the application paragraph for the lesser-included offense was not accidental. When "as included in the indictment" is the only means by which a jury can attach a deadly weapon to a lesser-included offense, I cannot identify an express deadly-weapon finding.

3.    **A motor vehicle is not a deadly weapon per se**

Third, in *Lafleur*, the defendant was charged with using a firearm, a weapon named in the statutory definition of "deadly weapon." TEX. PENAL CODE ANN. § 1.07(17) (Vernon 2003). Here, Appellant was charged with using a motor vehicle as a deadly weapon, which is not part of the statutory definition. If, as in *Lafleur*, we have relied upon an application paragraph to say "deadly weapon," even when the weapon at issue was a deadly weapon per se, we cannot now say that a jury charge (the application paragraph for the lesser-included offense and the verdict form) can be completely devoid of deadly-weapon language when the weapon at issue–a motor vehicle–is not a deadly weapon per se.

4.    **Conclusion**

My conclusion reaffirms *Polk* and *Lafleur* and simply limits the extent to which an

indictment can provide a basis for an express deadly-weapon finding for a lesser-included offense.[3] I would not extend *Lafleur* to allow an indictment to be the only source of that wording when a defendant is ultimately convicted of a lesser-included offense, not the offense charged in the indictment. Furthermore, I do not announce that the words "deadly weapon" must appear in the application paragraph necessarily, but that the jury should encounter those written words in association with the lesser-included offense somewhere in the jury charge at the guilt stage of the trial–either in the application paragraph or verdict form–so as to make an express finding pertaining to the lesser-included offense. Simply directing a jury to refer to the indictment by repeatedly stating, "as included in the indictment," does not produce an express deadly-weapon finding.

**V.     Whether Appellant's punishment was properly enhanced to a third degree felony based upon the trial court's deadly-weapon affirmative finding**

My resolution of Appellant's first issue determines the outcome of the second. Because the trial court's affirmative finding of a deadly weapon in the judgment was not proper, there was no basis for enhancing the punishment under section 12.35(c). Appellant's punishment could not properly have been enhanced to a third degree felony.

**VI.     Conclusion**

In conclusion, because the jury did not make an express deadly-weapon finding, the

---

[3]I do not question the effectiveness of the indictment in any other way aside from its role as a sole carrier of deadly-weapon language before a judgment of conviction for a lesser-included offense. It is well settled that "conviction for the lesser may be had under indictment for the greater." *Cosgrove v. State*, 37 Tex. Crim. 249, 39 S.W.367 (1897); TEX. PENAL CODE ANN. § 6.02(e) (Vernon 2003).

trial court's entry of an affirmative finding was improper. Therefore, Appellant's punishment should not have been enhanced to a third degree felony. I would reverse the court of appeals and remand the cause to the trial court.

Meyers, J.

Filed: December 9, 2009

Publish