**AFFIRMED as MODIFIED and Opinion Filed April 16, 2019**



**In The**
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00263-CR

**MATHEW CLAYTON HELGET, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F16-41618-N**

## MEMORANDUM OPINION
Before Justices Whitehill, Molberg, and Reichek
Opinion by Justice Reichek

After Mathew Clayton Helget pleaded guilty to the murder of his brother, the jury found him guilty and assessed punishment at sixty years in prison. In two issues, appellant contends the trial court erred in admitting body camera video of the crime scene and by entering an affirmative deadly weapon finding in the judgment. In a third issue, he requests that we modify the judgment to reflect his plea of guilty. For the reasons set out below, we overrule appellant's first two issues. We sustain his third issue, modify the trial court's judgment to correct the error, and affirm the judgment as modified.

FACTUAL BACKGROUND

In September 2016, appellant and his adult siblings had a barbecue to celebrate the life of their father, who had died two months earlier. Tables and chairs were set up in the backyard of

the home of one of appellant's sisters; food and drinks, including alcohol, were served. Guests began arriving in the late afternoon and included family members and friends.

By 11 p.m., most of the guests had left, and the few remaining were sitting in the backyard talking. Appellant was at a table with his older brother, John Helget; brother-in-law Travis Jones; and two long-time family friends, Kevin Skinner and Cathy Bureau. The group was talking, laughing, and joking, and the mood was described as "jovial." Appellant, who had been drinking throughout the night, casually pulled out a pocketknife and opened it. Smiling, he asked John, "Are you ready to die?" John, also smiling, replied, "I'm always ready to die, Brother." Seconds later, appellant "popped up out of his chair" and began stabbing John in the neck. Travis grabbed appellant's hand, pulled him back, and told him to drop the knife. Appellant threatened to stab Travis before dropping the knife.

John fell out of his chair face down on the ground. Cathy, who had first-responder training, immediately began applying pressure to his wounds to stop the bleeding while waiting for the police and emergency personnel to arrive. As she did so, she kept an eye on appellant because she feared he was going to attack John again or attack her. She said appellant watched what was happening but did not show any emotion. Despite the efforts to save John, he died that night. An autopsy showed he sustained eight stab wounds to the neck, chest, and forearm.

After Cathy, Travis, and Kevin testified about the events surrounding the stabbing, appellant announced he wanted to change his plea from not guilty to guilty. Once the trial judge determined that appellant's desire to change his plea was voluntary, he brought the jury back into the courtroom and appellant entered his guilty plea before the jury. The trial judge then charged the jury and instructed it to find appellant guilty as charged in the indictment. After brief deliberations, the jury returned a verdict of guilty.

At punishment, the State offered State's Exhibit 20, a video recording from a responding officer's body camera depicting the attempts at the scene to save John's life. The first minute of the video is dark and the images are difficult to see, but Cathy Bureau can be heard loudly talking to John, trying to keep him awake. She told the officer she was a former first responder, and the officer told her an ambulance was on the way. Someone shone a light, and the images became clearer. John was lying on his back on the ground with blood on his face and arms. Blood was also on the ground. An officer applied chest compressions as Cathy applied pressure to his neck wounds. Cathy and the officers repeatedly told John to "stay with" them. At one point Cathy beat John on the chest, and an officer told her to stop. She replied that hitting him on the chest revived him earlier. Three minutes into the video, emergency personnel arrived and took over.

Appellant's counsel objected to admission of the video, arguing its probative value was outweighed by the prejudicial effect of the details on the video. He argued the video was "basically a compilation of a thousand pictures when you watch four minutes of it happening" with sound and full color. The State responded that it was important for the jury to be aware of the "details" and the video was the "best evidence of that." The trial court overruled the objection, and the video was admitted and played for the jury.

In addition to the body cam video, several witnesses testified about appellant's verbally and physically abusive nature, generally when he had been drinking heavily. For example, a sister testified appellant pushed her over a coffee table after she intervened in an incident where he was "verbally aggressive" with his wife. A niece recounted two incidents of violence. In the first incident, she was six years old when she saw appellant choke her mother. In the second incident, appellant put a friend of hers in a headlock, pulled out a knife, and threatened to kill him. Another witness, who was John's nephew, testified that when he was thirteen years old, appellant put him in a choke-hold position, touched his "butt hole with his finger" over his clothes, and whispered

–3–

in his ear, "Have you ever been raped, boy?" Finally, another family member testified that when she and appellant were both children, appellant physically and sexually abused her.

After hearing the evidence, the jury sentenced appellant to sixty years in prison.

ADMISSION OF BODY CAMERA VIDEO

In his first issue, appellant contends the trial court abused its discretion by admitting body camera video showing the attempts to save John's life. He argues the video's probative value was substantially outweighed by its prejudicial effect and was therefore inadmissible under Texas Rule of Evidence 403.

We review a trial court's decision on the admissibility of evidence under an abuse of discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). A trial judge abuses his discretion when his decision falls outside the zone of reasonable disagreement. *Id.*

During the punishment phase, both the State and defense may offer evidence as to "any matter the court deems relevant to sentencing," including the circumstances of the offense for which he is charged. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1). Relevancy, in the context of punishment, is different than that contemplated by Texas Rule of Evidence 401 because, unlike the guilt/innocence phase where "facts of consequence" are narrowly drawn by the applicable statutes, there are no discrete factual issues to be determined at punishment. *See Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999). Determining what is relevant then should be a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case. *Id.*

Even so, rule 403 still applies to evidence offered at punishment. *See id.* at 266. Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* Unfair prejudice does not mean the evidence injures the opponent's case, which is the central point of offering evidence. *Id.* Rather, it refers to "an undue tendency to suggest

–4–

decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* (quoting *Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993). Evidence might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence. *See Gigliobianco v. State*, 210 S.W.3d 637, 642 (Tex. Crim. App. 2006).

In determining whether the danger of unfair prejudice substantially outweighs the probative value of photographic evidence, we consider the length of the video, whether it is color or black and white, whether it is gruesome, whether any bodies are clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case. *See Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010) (setting out factors for analyzing still photographs); *see also Fields v. State*, 515 S.W.3d 47, 56 (Tex. App.—San Antonio 2016, no pet.) (using same factors in rule 403 analysis of crime scene video).

Here, the video is in color. The relevant portion is less than four minutes in length and was discussed in only three pages of testimony. The video showed the efforts by Cathy and police to to revive John, who was clothed and lying on his back on the ground. Blood was on the ground. John did not appear to be conscious, and his face and arm were bloody. At one point, Cathy pounded John's chest to revive him and was told to stop by the police. Appellant argues these images offered a "very emotional scene" that would only "inflame the minds of the jurors."

The video depicted what happened immediately after appellant stabbed John. As such, it was an additional piece of evidence related to the commission of the crime that jurors could use in assessing appellant's punishment, and nothing in the record suggests it was offered solely to inflame the minds of the jury. Although the video offered an emotional scene following appellant's actions in fatally stabbing his brother, it depicted no more than the reality of the brutal crime committed and its immediate aftermath. *See Ripkowski v. State*, 61 S.W.3d 378, 392 (Tex. Crim.

App. 2001) (video showing close-ups of decomposing body was not unfairly prejudicial; it simply reflected "gruesomeness" of crime). To the extent appellant argues the evidence was cumulative of other evidence presented by the autopsy report, autopsy photographs, and medical examiner's testimony, we disagree. None of that evidence addressed what happened at the scene in the moments after appellant stabbed his brother.

Based on the record before us, we cannot conclude that the prejudicial effect of the video substantially outweighed its probative value. Accordingly, we conclude the trial court did not abuse its discretion in admitting it as evidence. *See Luna v. State*, No. 05-17-01188-CR, 2018 WL 3490875, at *2 (Tex. App.—Dallas July 20, 2018, no pet.) (mem. op.) (not designated for publication) (concluding body cam video at crime scene of efforts to revive gunshot victim was admissible at guilt-innocence phase over rule 403 objection that it was inflammatory and highly prejudicial); *Brown v. State*, No. 02-16-00484-CR, 2018 WL 1755248, at *4 (Tex. App.—Fort Worth Apr. 12, 2018, pet. ref'd) (mem. op.) (not designated for publication) (concluding probative value of body cam video of attempts to render aid to man shot in neck was not substantially outweighed by unfair prejudice and was admissible as punishment evidence); *Castillo v. State*, No. 14-15-00753-CR, 2016 WL 7177729, at *1–2 (Tex. App.—Houston [14th Dist.] Dec. 8, 2016, pet. ref'd) (mem. op.) (not designated for publication) (concluding body cam video at crime scene depicting body of victim shot after robbery admissible over rule 403 objection). We overrule the first issue.

### DEADLY WEAPON FINDING

In his second issue, appellant contends the trial court erred in entering a deadly weapon finding in the judgment because the jury made no such express finding.

An affirmative deadly weapon finding is the trier of fact's express determination that a deadly weapon was actually used or exhibited during the commission of the offense. *LaFleur v.*

*State*, 106 S.W.3d 91, 94 (Tex. Crim. App. 2003). Generally, an affirmative finding of a deadly weapon may be made when (1) the indictment includes an allegation of a "deadly weapon," and the verdict states the defendant is guilty as charged in the indictment, (2) the indictment does not allege "deadly weapon," but does allege a weapon that is per se a deadly weapon, and the verdict states the defendant is guilty as charged in the indictment, or (3) the jury has affirmatively answered a special charge issue on "deadly weapon" use or exhibition. *Polk v. State,* 693 S.W.2d 391, 396 (Tex. Crim. App. 1985). Alternatively, if the application paragraph of the charge adequately describes the use or exhibition of a deadly weapon, then the verdict of "guilty" combined with the application paragraph constitute the "affirmative finding." *LaFleur,* 106 S.W.3d at 98. The process of looking to the application paragraph, the indictment, and the verdict for the purpose of ensuring an "express finding" should not exalt form over substance to no discernible jurisprudential purpose. *See id.* However, a trial court cannot make an implied deadly weapon finding based solely upon its own assessment of the evidence and a general guilty verdict. *Id.* at 95.

Here, the indictment against appellant alleged he intentionally and knowingly caused the death of John Helget by inflicting stab wounds with a knife, "a deadly weapon." This indictment was read to the jury. After the State presented a portion of its case, appellant changed his not guilty plea and pleaded guilty to the charge before the jury. Thereafter, the trial court instructed the jury to find appellant "guilty as charged in the indictment." There were no objections to the trial court's jury instruction. The jury returned a general verdict of "guilty."

We conclude the combination of the indictment, appellant's plea of guilty, the trial court's instruction to the jury to find appellant guilty "as charged in the indictment," and the jury's verdict of guilty constituted an express finding that appellant used a deadly weapon to cause John's death. Thus, the trial court did not err by including a deadly weapon finding in its judgment. *See LaFleur*,

106 S.W.3d at 96; *Gasper v. State*, No. 05-09-01133-CR, 2011 WL 1900520, at *4 (Tex. App.—Dallas May 17, 2011, pet. ref'd) (not designated for publication).  We overrule the second issue.

MODIFICATION OF JUDGMENT

In his third issue, appellant requests that we modify the judgment to reflect his plea of guilty.  The trial court's judgment reflects a plea of not guilty, but the record shows appellant changed his plea to guilty during trial.  This Court has the authority to correct the judgment of the court below to make the record "speak the truth" when we have the necessary data and information to do so.  *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).  We sustain the third issue and modify the trial court's judgment to correct the error.

We affirm the judgment as modified.


/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE


Do Not Publish
TEX. R. APP. P. 47.2(b)
180263F.U05

–8–



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MATHEW CLAYTON HELGET,
Appellant

No. 05-18-00263-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F16-41618-N.
Opinion delivered by Justice Reichek;
Justices Whitehill and Molberg
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

To reflect appellant pleaded Guilty to the offense of murder.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered April 16, 2019