Affirmed and Memorandum Opinion filed October 30, 2007








Affirmed and Memorandum Opinion filed October 30, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00109-CR

_______________

 

MACK WILLIAMS IV, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 185th District Court

 Harris County, Texas

Trial Court Cause No. 1063517

                                                                                                                                                

 

M E M O R A N D U M  O P I N I O N

A jury
found appellant, Mack Williams, IV, guilty of manslaughter.  Upon submission of
a special issue, the jury found appellant used or exhibited a deadly weapon in
the commission of the offense.  The trial court assessed punishment of six
years= confinement and a fine of
$10,000.00.  In his sole issue, appellant contends the evidence was factually
insufficient to support the jury=s deadly weapon finding.  All
dispositive issues are clearly settled in law.  Accordingly, we issue this
memorandum opinion and affirm.  See Tex.
R. App. P. 47.4.

 








I. Background

On March
23, 2006,Tamara Corsey spent the night in room 102 of the I-10 motel in
Houston, Texas with Brittany  Taylor and Roland Babineaux.  When Corsey awoke
the next morning, Taylor was no longer in the room, and Babineaux was in her
bed, attempting to rape her.  Corsey escaped after she hit Babineaux over the
head with a beer bottle.  Corsey entered another motel room and called her
friend Lanny Fuselier.  She asked Fuselier to retrieve her from the motel and
explained that Babineaux either raped or attempted to rape her.  Corsey then
returned to room 102 and waited by the door for Fuselier to arrive.

Upon
receiving Corsey=s call, Fuselier immediately left and picked up appellant. 
At Fuselier=s request, appellant brought a .40 caliber Springfield handgun, which was
placed on the floor of Fuselier=s car.  Appellant and Fuselier arrived at the motel
approximately eight minutes after Corsey=s call.  

Corsey
began loading her belongings into Fuselier=s car.  She asked Fuselier to help
her gather the rest of her belongings from the motel room.  Fuselier exited the
car and waited by the motel room door while Corsey retrieved the rest of her
property.  After she gathered these items, Corsey waited in the car while
appellant and Fuselier entered the motel room.

Two
alternative theories were presented at trial as to the events that occurred
after appellant and Fuselier entered the motel room.  Brandi Pogue, a
prostitute staying at the motel, observed Babineaux dive out through the closed
window of room 102.  She testified that as Babineaux attempted to regain his
footing, appellant and Fuselier emerged from the motel room and wrestled with
him for about two or three minutes.  Appellant then produced a handgun and,
with Fuselier=s encouragement, shot Babineaux.  After the shooting, appellant and
Fuselier ran to Fuselier=s car and drove away.








Alternatively,
Fuselier testified that he was standing by the motel room door,  holding the
Springfield handgun at his side.  As he prepared to leave, he and Babineaux
began to argue.  He insulted Babineaux, who charged him and grabbed his chest. 
The two men Atussled@ for a short period of time, and, during that period, Fuselier
accidentally fired the gun, hitting Babineaux.  Babineaux then jumped out of
the window while Fuselier and appellant ran out of the motel room, got into his
car, and drove away.  

Babineaux
was taken via Life-Flight helicopter to Memorial Hermann Hospital, where,
despite efforts to resuscitate him, he died as a result of his injuries.  

During
the police investigation into Babineaux=s killing, officers recovered a
bullet casing from inside the motel room and a bullet matching that casing from
a soda machine outside the motel room.  Based on the bullet=s trajectory, it appeared the bullet
had been fired from inside the motel room, traveled through room 102=s window, and came to rest in the
soda machine, having traveled at a slightly downward angle.  The investigating
officers did not recover any other physical evidence of value from the crime
scene.  The autopsy of Babineaux=s body did not reveal any evidence of
gun powder residue or stippling.

Appellant
and Fuselier were eventually arrested.  Eyewitnesses, investigating officers,
and medical examiners testified at trial.  The jury convicted appellant of
manslaughter and, in response to a special issue, found that appellant used or
exhibited a deadly weapon in the commission of the offense.

II. Factual Sufficiency of the Evidence

Appellant
claims the evidence is factually insufficient to support the jury=s finding that he used or exhibited a
deadly weapon.  Specifically, appellant contends the finding that he was the
primary actor in the shooting is against the great weight and preponderance of
the  evidence, and the trial court could not rely on the law of parties to
support the deadly- weapon finding.  We disagree.

                                      
                                    








First,
we acknowledge that a factual sufficiency review begins with the presumption
that the evidence is legally sufficient.  Clewis v. State, 922 S.W. 2d
126, 134 (Tex. Crim. App. 1996).   In evaluating factual sufficiency of the
evidence, we view all the evidence in a neutral light and will set aside the
verdict only to prevent manifest injustice.  Watson v. State, 204 S.W.3d
404, 414 (Tex. Crim. App. 2006).  In conducting a factual sufficiency review,
we engage in a two prong test to determine whether there is some objective
basis to find: (1) the evidence in support of the jury=s verdict, although legally
sufficient, is nevertheless so weak that the jury=s verdict seems clearly wrong and
unjust; and (2) in considering conflicting evidence, the jury=s verdict, although legally
sufficient, is nevertheless against the great weight and preponderance of the
evidence.  Id. at 414-17.  Although a factual sufficiency review
authorizes an appellate court to act in the capacity of a so-called Athirteenth juror,@ due deference must be accorded the
fact finder=s determinations, particularly those determinations concerning the weight
and credibility of the evidence.  See id. at 416-17.

An
affirmative deadly weapon finding may be entered by the trial court in three
instances: (1) the indictment alleges the use of a deadly weapon and the jury
finds the defendant guilty as charged in the indictment; (2) the weapon is
deadly per se; or (3) the jury affirmatively answers a special issue on the matter. 
See Lafluer v. State, 106 S.W.3d 91, 96 (Tex. Crim. App. 2003).  In the
judgement, the trial court is required to set forth any affirmative findings
that a deadly weapon was used or exhibited during the commission of a felony
offense, if the defendant either personally used or exhibited the deadly weapon
or was a party to the offense and knew a deadly weapon would be used or
exhibited.  See Tex. Code Crim.
Proc. Ann. art. 42.12 ' 3g (a)(2) (Vernon 2006).








Appellant
contends the jury could not rely on the testimony of Brandi Pogue to support a
finding that he personally used or exhibited a deadly weapon because her
testimony is against the great weight and preponderance of the evidence.  Pogue
testified that she observed appellant and Fuselier emerge from room 102 after
Babineaux dove through the motel room window; appellant and Fuselier wrestled
with Babineaux for two or three minutes; appellant produced a handgun; and,
with Fuselier=s encouragement, appellant shot Babineaux.  Appellant argues Pogue=s testimony was unreliable because
she is a prostitute and a drug addict, and has been convicted of various crimes
including forgery, theft, and prescription fraud.  Additionally, he asserts
Pogue=s testimony is unreliable because she
rented the motel room for only one hour and her attention was first drawn to
Fuselier=s vehicle because she thought it was
a drug dealer=s car.  However, the jury could have reasonably believed Pogue=s testimony despite the challenges to
her credibility.  Pogue testified that, although she struggles with drug abuse,
on the morning in question Pogue was sober and had recently awoken after eight
or nine hours sleep.  When evaluating Pogue=s credibility the jury was entitled
to decide the weight, if any, to assign to her profession as a prostitute, her
history of drug abuse, and her criminal record.

Appellant
notes several witnesses presented evidence that conflicted with Pogue=s testimony.  Specifically, Fuselier
admitted to shooting Babineaux in the motel room; Fuselier and Corsey testified
that appellant did not have a gun during the incident; and physical evidence
indicated a gun was fired inside the motel room.  Further, Pogue testified she
saw Aa guy@ in the driver=s seat of the car before the shooting
occurred; but Corsey, a female, testified she was waiting for appellant and
Fuselier in the car=s passenger seat.  








However,
Detective Brent Clegg, the lead investigator in this case, did not observe
anything in the room, other than a broken window, that might indicate two men
had struggled before a gun was fired.  Detective Clegg and Marissa Feeney, an
assistant medical examiner in the Harris County Medical Examiner=s Office, also testified that, when a
person is shot at close range, as in the close quarters combat described by
Fuselier, the shot generally leaves gun powder residue on the victim or results
in stippling to the victim=s body.  Babineaux=s body did not exhibit either
phenomenon.  However, the medical examiner also testified that, in the absence
of stippling or gunpowder residue, her examination of the injuries to Babineaux=s body did not reveal enough
information to determine the range at which he was shot.  

The jury
was in the best position to judge the credibility of the witnesses, and we
defer to its judgment unless the record clearly indicates that a different
result is appropriate.  See Watson, 204 S.W.3d at 414-17.  We cannot
conclude the evidence was so weak that the verdict appears to be clearly
unjust, or that Pogue=s testimony was so undermined by the great weight and
preponderance of conflicting evidence that the jury could not believe Pogue=s account of the incident. 
Therefore, the evidence is factually sufficient to support the jury=s finding that appellant personally
used or exhibited a deadly weapon.

Appellant
also contends the deadly weapon finding cannot be supported under the law of
parties because neither the jury instructions at the guilt-innocence phase nor
the jury instructions that accompanied the deadly-weapon special issue required
a finding that appellant knew a deadly weapon would be used or exhibited. 
However, having concluded the evidence is factually sufficient to support the
jury=s finding that appellant personally
used or exhibited a deadly weapon, we need not address whether the evidence is
factually sufficient to support the jury=s deadly weapon finding under a
law-of-parties theory.  We overrule appellant=s sole issue.

Accordingly,
the judgment of the trial court is affirmed.

 

 

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed October 30, 2007.

Panel consists of Chief Justice
Hedges and Justices Anderson and Seymore.

Do Not Publish C Tex.
R. App. P. 47.2(b).