**Opinion filed June 10, 2010**



In The

# Eleventh Court of Appeals

_____

## No. 11-08-00274-CR

_____

## JESSIE EARL GRIFFITH, Appellant

## V.

## STATE OF TEXAS, Appellee

On Appeal from the 104th District Court

Taylor County, Texas

Trial Court Cause No. 16815B

### O P I N I O N

The jury convicted Jessie Earl Griffith, of manslaughter and sentenced him to confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of twenty years. The jury additionally imposed a fine of $10,000. Appellant challenges his conviction in two issues. We affirm.

*Background Facts*

Appellant was indicted for the murder of Brenda Sue Eldredge. The first paragraph of the indictment alleged that on or about December 22, 2007, appellant intentionally and

knowingly caused the death of Eldredge by "running over [her] with a deadly weapon, to-wit: A MOTOR VEHICLE." *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2003). The second paragraph of the indictment alleged that on or about December 22, 2007, appellant intentionally and knowingly, with intent to cause serious bodily injury to Eldredge, committed "an act clearly dangerous to human life, to-wit: running over the said BRENDA SUE ELDREDGE with a motor vehicle, thereby causing the death of the said BRENDA SUE ELDREDGE." *See* TEX. PENAL CODE ANN. § 19.02(b)(2) (Vernon 2003).

Appellant's trial for the murder of Eldredge began on August 4, 2008. Gerald Earnest Self testified that Eldredge and Clifford Miles came to his home on Plum Street in Abilene on December 22, 2007. Eldredge had been staying at Self's home for about two weeks prior to the murder. Eldredge, Miles, and Self remained at Self's home for several hours during which time they drank heavily. At some point, Eldredge called appellant to come over to Self's house so that he could transport them to the grocery store in his van. Self testified that appellant was "messed up" when he arrived at Self's home and that appellant "[c]ouldn't hardly stand up." Appellant, Eldredge, and Miles subsequently left in appellant's van for the grocery store with Eldredge driving. Self testified that Eldredge was the only one of the three that left in the van that possessed a driver's license.

Miles testified that he, Eldredge, and Self were drinking and having a good time at Self's home on December 22, 2007. He estimated that the three of them had been drinking there for a couple of hours before Eldredge called appellant to come over to Self's home. Miles testified that appellant remained at the house for an hour or two after he arrived before Miles, Eldredge, and appellant left in appellant's van with Eldredge driving for the purpose of going to the grocery store. Miles testified that appellant drank with the group before leaving for the grocery store. Miles further testified that the group "didn't make it" to the grocery store because they stopped at the El Culmpio bar and stayed there for several hours. Miles estimated that Eldredge and appellant drank between seven to nine beers apiece while they were at the bar.

Miles testified that he decided to leave the bar because he was drunk and wanted to go home. Miles, Eldredge, and appellant got into appellant's van with Eldredge driving, Miles sitting in the front passenger seat, and appellant sitting on a milk crate in the back of the van. Eldredge drove the group to Miles's apartment on North 3rd Street. When the group arrived at the apartment complex, Eldredge parked the van along a curb and privacy fence. She placed the

2

van in "park" and exited the vehicle while the engine continued to run. Eldredge walked in front of and away from the van along the privacy fence located next to the curb where she parked the van. As Miles was exiting the van, he offered to let appellant stay with him because appellant was also intoxicated. Miles testified that appellant suddenly jumped into the driver's seat and "just took off" as Miles was attempting to exit the van. As he was driving the van, appellant drove up on the curb and struck the privacy fence with the van's front bumper. He also struck Eldredge with the hood and right front quarter panel of the van causing her to be dragged along the privacy fence. Eldredge died as a result of her injuries. Miles also suffered physical injuries as a result of appellant's actions.

The trial court submitted the lesser included charge of manslaughter in the court's charge to the jury along with the two murder charges alleged in the indictment. The jury found appellant guilty of only manslaughter.

*Sufficiency of the Evidence*

In his first issue, appellant challenges the legal and factual sufficiency of the evidence to support his conviction for manslaughter. To determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part *Zuniga v. State*, 144 S.W.3d 477 (Tex. Crim. App. 2004)); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11. The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

The Penal Code provides that a person commits manslaughter in the following manner: "A person commits an offense if he recklessly causes the death of an individual." TEX. PENAL

CODE ANN. § 19.04(a) (Vernon 2003). The requisite culpable mental state is defined by the Penal Code as:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(c) (Vernon 2003). Appellant presents the following argument in support of his evidentiary claims:

> The Appellant would submit that the evidence fails to show a level of culpability higher than criminal negligence. There is no evidence that the vehicle was traveling at a high rate of speed or that he was aware that Ms. Eldridge (sic) was in front of the van when he drove away. The evidence does not show that the Appellant was aware of the risk of his conduct but consciously chose to disregard it.

Mental culpability is of such a nature that it generally must be inferred from the circumstances under which the prohibited act occurred. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978); *Russo v. State*, 228 S.W.3d 779, 793 (Tex. App.—Austin 2007, pet. ref'd); *Skillern v. State*, 890 S.W.2d 849, 880 (Tex. App.—Austin 1994, pet. ref'd). A culpable mental state may be inferred by the trier of fact from the acts, words, and conduct of the accused. *Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. 1982); *Skillern*, 890 S.W.2d at 880; *Fuentes v. State*, 880 S.W.2d 857, 860 (Tex. App.—Amarillo 1994, pet. ref'd). The question presented here is whether there was some evidence in the record of appellant's trial that would permit a rational jury to find beyond a reasonable doubt that he possessed the requisite culpable mental state of recklessness. Recklessness requires the conscious disregard of a substantial and unjustifiable risk created by the actor's conduct. Whether the actor is aware of the requisite risk is a conclusion to be reached by the trier of fact from all the evidence and the inferences drawn therefrom. *See In re E.U.M.*, 108 S.W.3d 368, 370 (Tex. App.—Beaumont 2003, no pet.). "The issue is not one of theoretical possibility, but one of whether, given all the circumstances, it is reasonable to infer that the particular individual on trial was in fact aware of the risk." *Dillon*, 574 S.W.2d at 95. A defendant, however, need not be aware of the specific risk of another's

death in order to commit manslaughter. *Trepanier v. State*, 940 S.W.2d 827, 829 (Tex. App.—Austin 1997, pet. ref'd).

The record reflects that appellant drove the van despite being intoxicated at the time. In this regard, voluntary intoxication does not constitute a defense to the commission of the crime. TEX. PENAL CODE ANN. § 8.04(a) (Vernon 2003). He began driving the van soon after Eldredge exited the vehicle. Appellant struck her with the hood and right front quarter panel of the van while she was located in front of the van. He caused the van to jump a curb and drive into the privacy fence as he drove the van. He obviously did not keep a proper lookout, and he failed to control the van in a safe manner. In the process, he struck Eldredge with the van, causing her death. "At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct." Lewis v. State, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975).

Viewing all the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant acted recklessly when he voluntarily created a substantial and unjustifiable risk that he disregarded when he struck appellant with the van. The fact that there is no evidence that appellant was driving at a high rate of speed is of little consequence because he obviously drove the van at a speed capable of killing Eldredge when he struck her. Additionally, the jury had ample evidence to infer that appellant should have been aware of Eldredge's location in relation to the van. Accordingly, appellant's conviction for manslaughter is supported by legally sufficient evidence.

With respect to the factual sufficiency of the evidence, the evidence supporting the jury's verdict is not so weak as to render it clearly wrong and manifestly unjust. Furthermore, the jury's verdict is not against the great weight and preponderance of the conflicting evidence. In this regard, no evidence was presented from any source contrary to that outlined in this opinion. Thus, viewing all the evidence in a neutral light and giving deference to the jury's verdict, we reject appellant's contention that the evidence is factually insufficient to sustain his conviction. Appellant's first issue is overruled.

*Deadly Weapon Finding*

Appellant asserts in his second issue that the trial court erred in making an affirmative deadly weapon finding in the court's written judgment without an express finding by the jury to a special issue on the use of a deadly weapon. The resolution of this issue is controlled by the holding in *Lafleur v. State*, 106 S.W.3d 91 (Tex. Crim. App. 2003). The court in *Lafleur*

reaffirmed its previous holding in *Polk v. State*, 693 S.W.2d 391 (Tex. Crim. App. 1985), that there must be an express finding of a deadly weapon when the jury is the factfinder. 106 S.W.3d at 92. However, the court disagreed with its previous holding in *Davis v. State*, 897 S.W.2d 791 (Tex. Crim. App. 1995), by holding:

> [C]ourts may look to the application paragraph of a lesser-included offense to determine if the express deadly weapon allegation in that portion of the jury charge matches the deadly weapon allegation in the indictment for the charged offense. If so, the trial court may enter a deadly weapon finding in the judgment based upon the jury's verdict of guilt on the lesser-included offense.

*Id.*

*Lafleur* involved a similar situation wherein the jury acquitted the defendant of the charged offense of murder but convicted him of the lesser included offense of manslaughter. 106 S.W.3d at 92-93. The indictment in *Lafleur* alleged that the defendant "did then and there intentionally and knowingly cause the death of an individual, namely: Keith Walker, hereafter styled the complainant, by shooting the complainant with a deadly weapon, to-wit: a firearm." *Id*. at 92. The application paragraph contained in the jury charge for the lesser included offense of manslaughter read as follows:

> Therefore, if you believe from the evidence beyond a reasonable doubt that in Jefferson County, Texas, on or about May 31, 1998, the defendant Michael Winn Lafleur, did then and there recklessly cause the death of an individual, namely: Keith Walker, hereafter styled the complainant, by shooting complainant with a deadly weapon, to-wit: a firearm, you shall find the defendant guilty of the lesser included offense of Manslaughter.

*Id*. at 93. The trial court entered an affirmative finding in its written judgment that the defendant used a deadly weapon.

The court reasoned in *Lafleur* that, if the jury's verdict of a lesser included offense is based upon an application paragraph that explicitly and expressly requires the jury to find that the defendant used a deadly weapon in the commission of the offense, the underlying purpose of *Polk* has been achieved. *Id*. at 98. Based upon this reasoning, the court determined that the combination of: (1) the indictment that alleged the use of a deadly weapon; (2) the application paragraph of the jury charge of the lesser included offense of manslaughter that required a finding, beyond a reasonable doubt, that the appellant used a deadly weapon; and (3) the jury's

6

verdict that appellant was guilty of the lesser included offense of manslaughter, constituted an express finding that appellant used a deadly weapon to cause the victim's death. *Id*. at 99.

The same "combination" relied upon in *Lafleur* for an express finding on the use of a deadly weapon exists in this case. The indictment alleged that appellant used a deadly weapon in the form of a motor vehicle to commit murder. The application paragraph for the lesser included offense of manslaughter required a finding beyond a reasonable doubt that appellant used a deadly weapon in the commission of the offense as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about December 22, 2007, in Taylor County, Texas, the defendant JESSIE EARL GRIFFITH, did recklessly cause the death of an individual, Brenda Sue Eldredge by running over the said Brenda Sue Eldredge with a deadly weapon, to-wit: A Motor Vehicle, thereby causing the death of the said Brenda Sue Eldredge, then you will find the defendant, JESSIE EARL GRIFFITH, guilty of Manslaughter, a lesser included offense.

Lastly, the jury found appellant guilty of the lesser included offense of manslaughter as alleged in the application paragraph. Thus, the jury made an express finding that appellant used a deadly weapon in the commission of the offense of manslaughter under the holding in *Lefleur*.

Appellant asserts that *Lefleur* is distinguishable because the weapon at issue in *Lefleur* (a firearm) was a deadly weapon *per se*. *See* TEX. PENAL CODE ANN. § 1.07(17)(A) (Vernon Supp. 2009). We disagree. In accordance with TEX. PENAL CODE ANN. § 1.07(17)(B) (Vernon Supp. 2009), the jury charge in the instant appeal defined "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." We must assume that the jury followed the instructions as set forth in the jury charge. *See Miles v. State*, 204 S.W.3d 822, 827-28 (Tex. Crim. App. 2006). Accordingly, the jury's finding of guilt on the lesser included charge of manslaughter also constituted a finding that the motor vehicle constituted a deadly weapon under the applicable definition.

Moreover, the Texas Court of Criminal Appeals recently held in *Crumpton v. State*, 301 S.W.3d 663, 664 (Tex. Crim. App. 2009), that a guilty verdict of homicide necessarily is a finding that a deadly weapon was used. *See* TEX. PENAL CODE ANN. § 19.01(b) (Vernon 2003) (manslaughter constitutes homicide). Under *Crumpton*, the jury's determination that appellant committed manslaughter necessarily constituted a finding that he used something that in the manner of its use was capable of causing – and did cause – death. Therefore, the verdict of

7

manslaughter was an adequate basis for the trial court's entry of the deadly weapon finding in the judgment.  Appellant's second issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


June 10, 2010

Publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.