**Opinion filed November 26, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00348-CR

_____

## ZACHARY BLAKE HERNANDEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 385th District Court
### Midland County, Texas
### Trial Court Cause No. CR38343

### M E M O R A N D U M   O P I N I O N

In a two-count indictment, the grand jury indicted Zachary Blake Hernandez first for the offense of intoxicated manslaughter and next for the offense of manslaughter. After a jury trial, as to count one, the jury found Hernandez not guilty of the charged offense of intoxicated manslaughter and instead found him guilty of the lesser-included offense of driving while intoxicated. As to count two, the jury found Hernandez guilty of manslaughter but found that Hernandez did not

use a deadly weapon. The jury assessed Hernandez's punishment for the DWI conviction at confinement for 180 days, and it also assessed a $2,000 fine. For the manslaughter conviction, the jury assessed Hernandez's punishment at confinement for five years, and it also imposed a fine of $10,000. The jury declined to recommend probation, and the trial court sentenced Hernandez in accordance with the jury's verdict.

Hernandez has not challenged his DWI conviction. However, in a single issue, he maintains that the evidence is not sufficient to support his manslaughter conviction. Because we find that the evidence is sufficient, we affirm.

We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *Brown v. State,* 381 S.W.3d 565, 573 (Tex. App.—Eastland 2012, no pet.).

We employ those standards to determine whether Hernandez recklessly caused the death of an individual. TEX. PENAL CODE ANN. § 19.04(a) (West 2011). A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously

disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id.* § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.*

The events of December 2010 that culminated in the death of Heidi Evans, the victim in this case, began with a motorcycle ride. Adam Pruett testified that he and Hernandez went on a motorcycle ride beginning in the midafternoon of December 26. During that ride, they stopped at Corky's Bar and Grill in Odessa. Heath Boyd and Kelly Brown had either joined in the ride or were already at Corky's when Pruett and Hernandez arrived; the four of them each drank a beer and ate nachos.

The four left Corky's and rode their motorcycles to a bar in Midland County, the Blue Max. They had been there only a short while when Hernandez left to pick up Evans and bring her to the Blue Max; he and Evans returned to the Blue Max a short time later. While at the Blue Max, the group drank beer and "Vegas Bomb" shots. Vegas Bomb shots contain about 1.5 ounces (shot and one-half) of alcohol—one-third Crown (Crown Royal), one-third peach schnapps, one-third Malibu (coconut rum)—and are topped off with Red Bull (an energy drink).

Because it was very cold that night, it was decided that Hernandez would ride his motorcycle home to get his vehicle and return for the others. Evans decided to ride with him. Their route took them down the service road by Loop 250 in Midland.

Two separate witnesses in two separate vehicles testified that, as they traveled on Loop 250 or the service road to Loop 250 that night, they saw a cloud of dust or a smoky or dirty substance in the air. Each of the witnesses stopped; they saw an overturned motorcycle and also saw Hernandez and Evans lying on the

ground in different places in the area of the wrecked motorcycle. Neither Hernandez nor Evans was responsive or conscious. According to the testimony of the medical examiner that performed an autopsy on Evans, Evans died as a result of a closed-head injury that resulted from a motorcycle rollover.

The wreck occurred on a slight "S curve" in the roadway when Hernandez failed to make the right end of the "S curve" and hit a curb. Hernandez and Evans were both ejected from the motorcycle.

Pruett, an experienced motorcycle rider, testified to the effects that cold weather could have on a person as he drives a motorcycle. He testified that, in cold weather, "your whole body tenses up, you don't make smooth movements and transitions." Hernandez, also an experienced motorcycle driver with over twelve years of experience—during which time he had been on over one thousand rides—agreed that in cold weather a motorcycle rider's whole body stiffens and that his hands, chest, and legs would be very cold. Hernandez agreed that it was very cold the night of December 26.

Dale Garner testified before the jury as an expert on motorcycle mechanics. After the wreck, Garner examined Hernandez's motorcycle. He found nothing mechanically deficient.

Although he denied it on direct examination, on cross-examination, Hernandez admitted that, as he rode what Garner said was a properly functioning motorcycle in the cold weather of December 26 with Evans as his passenger, he was intoxicated. The results of a blood draw taken from Hernandez on the night of the wreck confirmed that he was intoxicated. The results showed that Hernandez had a blood alcohol concentration of 0.27, over three times the legal limit of 0.08. *See id.* § 49.01(2)(B). Expert testimony at the trial reflected that a person with a blood alcohol concentration of 0.27 could not safely operate a motorized vehicle. Such an alcohol concentration could result in double vision and would be

4

detrimental to reaction time, visual acuity, recovery from light, and the ability to perform complex tasks.

Hernandez's specific issue on appeal is that, without any testimony regarding the manner in which he operated his motorcycle and without any accident reconstruction testimony to substantiate a conscious disregard of a substantial and unjustifiable risk, the evidence is insufficient to establish, beyond a reasonable doubt, that he is guilty of the offense of manslaughter.

We know of no requirement that an accident reconstructionist must testify before the trier of fact is allowed to find that the accused consciously disregarded a substantial and unjustifiable risk that the circumstances existed or that the result would occur. Generally, mental culpability is such that it must be inferred from the circumstances under which the prohibited act occurred. *Griffith v. State*, 315 S.W.3d 648, 651 (Tex. App.—Eastland 2010, pet. ref'd). The trier of fact may infer a culpable mental state from the acts, words, and conduct of the defendant. *Id.* In a case that involves reckless behavior, the issue is "whether there was some evidence in the record of appellant's trial that would permit a rational jury to find beyond a reasonable doubt that he possessed the requisite culpable mental state of recklessness." *Id.* at 652. It is within the province of the trier of fact to conclude, from all the evidence and the inferences to be drawn from it, whether the accused is aware of the requisite risk. *Id.*

When viewed in the light most favorable to the verdict, the evidence shows that Hernandez had ridden motorcycles on over 1,000 rides over a twelve-year period. He was an experienced motorcycle rider and was familiar with the detrimental effects that cold weather could have on the driver of a motorcycle. He drove his motorcycle in that weather when, by his own admission, he was intoxicated; he had a blood alcohol concentration of 0.27, over three times the level at which a person is deemed to be legally intoxicated. Under the evidence and the

inferences to be drawn from that evidence, a rational jury could have found that it was in that state and under those conditions that Hernandez, with Evans as his passenger, failed to negotiate a curve and wrecked his motorcycle, which resulted in Evans's death. We hold that, based on the evidence that we have outlined and the reasonable inferences to be drawn from it, a rational jury could have found the essential elements of the offense of manslaughter beyond a reasonable doubt. Hernandez's sole issue on appeal is overruled.

We affirm the judgments of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


November 26, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.