Opinion filed July 31, 2015



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00192-CR

_____

## CHRISTOPHER DANIEL MARQUEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 118th District Court**

**Howard County, Texas**

**Trial Court Cause No. 13644**

## M E M O R A N D U M   O P I N I O N

The grand jury returned a three-count indictment against Christopher Daniel Marquez. In Count I, the grand jury charged Appellant with the offense of aggravated assault causing serious bodily injury to Raul Mendez; in Count II, it charged him with the offense of murder of Luis Adolfo Pena, Jr.; and in Count III, it charged him with the offense of unlawful possession of a firearm by a felon. After

a trial, the jury found him guilty on all three counts,[1] and the trial court then assessed his punishment at confinement for fifteen years, forty years, and ten years respectively. The trial court ordered that the sentences were to run concurrently. We affirm.

Appellant presents us with one issue: the evidence is insufficient to show that Appellant intended to cause serious bodily injury to Luis Adolfo Pena, Jr., the murder victim. Appellant has not challenged his convictions under Count I and Count III.

We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's role as the sole judge of the witnesses' credibility and of the weight to be afforded to that testimony. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we will presume that the factfinder resolved any conflicts in favor of the

---

[1]Before the testimony began, and without objection, the State struck the word "serious" before "bodily injury" in Count I of the indictment. The charge in Count I of the indictment then became aggravated assault causing bodily injury; the offense of which the jury ultimately found Appellant guilty. However, in the judgment, the trial court recited that the conviction was for the offense of aggravated assault causing serious bodily injury. But there has been no appeal from that judgment.

prosecution and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

When viewed in the light most favorable to the verdict, the evidence showed that around 10:00 p.m. on Friday, October 26, 2012, Cynthia Trevino and Luis Pena, Jr. went to a club together to celebrate the fact that her divorce had become final. Cynthia and Luis had known each other for about fifteen years, but had only become romantically involved in August 2012.

Cynthia and Luis first went to a couple of different clubs in Big Spring. At each of the places, they had drinks with several people, including Raul Mendez, who was Cynthia's cousin, and Raul's date, Anel.

Friday night turned into Saturday morning, and eventually, sometime after 2:00 a.m., Cynthia and Luis ended up for more drinks at a Halloween party at the VFW hall in Big Spring. According to Cynthia, Raul and Anel got to the VFW "right after" she and Luis did. Not long thereafter, Cynthia noticed that Raul was looking across to the other side of the building; he was looking at Ramiro "Cleo" Marquez, Appellant's brother. Raul and Cleo were "staring each other down because of Anel." Anel was Cleo's former girlfriend.

Raul walked across the room to confront Cleo, and when he got there, they began to fight. Four others, including Appellant, joined Cleo in the fight against Raul. Cynthia, Luis, and other "random people" broke up the fight. Cleo and the others who were fighting with him ran outside. Raul ran after them. "Everybody ran. Everybody ran."

When Raul ran to the back of "their" vehicle (a white Cadillac), Appellant shot him. At that time, Appellant was on the driver's side of the vehicle toward the back. Raul was behind the vehicle, close to the trunk. As Raul tried to "make a run for it," Appellant shot him again, this time in the back. As Cynthia watched Raul fall, she heard another shot to her right. After the shot was fired, Appellant and the

3

others "[took] off" in the vehicle. It was at this point that she found Luis lying on the ground with a bullet hole in his head. Cynthia told the jury that it was there on that parking lot that Luis took his last breath.

Appellant was the only person that Cynthia saw with a gun that morning, and she watched him point it at Raul and fire. Raul and Cynthia both testified that Raul was shot twice. At the time, Appellant was on the driver's side of the vehicle, and Raul was on the passenger's side. Appellant fired the first shot across the roof of the vehicle. Appellant shot Raul the second time as Raul was running away; Appellant shot him in the back. Raul continued to run and ultimately ended up hiding behind Anel's vehicle, which was located on the south side of the parking lot. As he was taking cover there, Raul heard a third shot.

Other witnesses testified that they were on the parking lot at the time of the shootings and heard gunshots. Michael Vanderbilt said that he heard approximately three shots, but that he could not identify who the shooter was and that, when he saw a gun, he immediately turned away. He also testified that he did not see Luis outside until after Luis had been shot. However, in an earlier statement that he had made, Michael said that the shooter pointed a black .22 revolver toward Raul and Luis. The expert testimony in the case indicated that Luis's wound was "consistent with a soft lead, small caliber projectile, such as would be commonly seen in a .22 long rifle."

Another witness, Donald Vanderbilt, testified that he heard about two shots to the south side of where he was in the parking lot and two shots to the north side of where he was in the parking lot. Raul's blood was found on the ground on the south side of the parking lot—the passenger's side of the vehicle—behind Anel's vehicle where he was hiding. Luis's body was found on the north side of the parking lot.

Appellant's position on appeal is that the evidence constitutes no more than "a modicum of evidence that Appellant intended to harm" Luis rather than Raul. He

4

claims the evidence "overwhelmingly implied" that, "at best," Luis was an unintended victim and that Raul was the intended victim. Further, Appellant contends that the jury charge did not contain an instruction on transferred intent. Therefore, argues Appellant, even though the evidence would have supported a conviction under that theory, the jury was not authorized to convict under a theory of transferred intent.

The State counters that it was not relying on a theory of transferred intent to support the conviction. The State maintains that there was more than a "mere modicum" of evidence from which a rational jury could have found beyond a reasonable doubt that Appellant intentionally shot Luis.

A person commits the offense of murder if that person intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b) (West 2011). An inference that a person acted with the requisite intent may be drawn from his acts, words, and conduct. *Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. [Panel Op.] 1982); *Griffith v. State*, 315 S.W.3d 648, 651 (Tex. App.—Eastland 2010, pet. ref'd). Further, an intent to kill may be inferred from the use of a deadly weapon. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

When we view the evidence in the light most favorable to the verdict, we agree with the State that a rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. As far as any alleged conflicts in the evidence, the jury was free to resolve them. *See Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). We assume that the jury resolved any conflicts in favor of the verdict. *Matchett v. State*, 941 S.W.2d 922, 936 (Tex. Crim. App. 1996).

When viewed under the appropriate standard of review, the evidence shows that Luis had intervened in the fight between Cleo and Raul—a fight in which

5

Appellant was involved. Witnesses testified that Appellant fired two shots at Raul, hitting him both times. Next, as the State argues, the evidence shows that there were two different lines of fire and that those lines of fire were in two different directions. The shots that hit Raul were fired in a different direction than the shot that killed Luis. Luis was shot on the same side of, and near to, the place where Appellant was standing. Raul was shot on the opposite side from where Appellant was standing. There was testimony from witnesses that three shots were fired. That testimony conforms to the evidence that Appellant shot Raul twice and shot Luis once. The bullet that caused Luis's single wound to the head was consistent with wounds caused by small caliber bullets like a .22. Testimony showed that Appellant was holding and aiming a black .22 revolver. Witnesses saw Appellant with a gun, a black .22 revolver; no one saw anyone else with a gun during the incident.

From this evidence, and the reasonable inferences to be drawn from it, we believe that a rational jury could have found beyond a reasonable doubt that Appellant intended to cause serious bodily injury to Luis and that Appellant was guilty of the offense of murder as charged in Count II of the indictment. We overrule Appellant's sole issue on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


July 31, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

6