PD-1427-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/5/2015 2:37:18 PM
Accepted 11/5/2015 3:36:51 PM
ABEL ACOSTA
CLERK

# COURT OF CRIMINAL APPEALS

## PD-_____-15

## *Tammy Morris Lowe, Appellant*
## *v.*
## *State of Texas, Appellee*

**On Discretionary Review from**
**No. 05-14-01297-CR**
**Fifth Court of Appeals**

**On Appeal from Criminal District Court No. 5**
**Cause Number F13-00199**
**Dallas County**

# Appellant's Motion to Extend Time to File Petition for Discretionary Review

FILED IN
COURT OF CRIMINAL APPEALS

November 5, 2015

ABEL ACOSTA, CLERK

**Michael Mowla**
**P.O. Box 868**
**Cedar Hill, Texas 75106**
**Phone: 972-795-2401**
**Fax: 972-692-6636**
**michael@mowlalaw.com**
**Texas Bar No. 24048680**
**Attorney for Appellant**

**To the Honorable Judges of the Court of Criminal Appeals:**

Appellant moves for an extension of time of **<u>30 days</u>** to file a petition for discretionary review:

1. On November 3, 2015, in *Lowe v. State,* No. 05-14-01297-CR, (Tex. App. Dallas, November 3, 2015), the Court of Appeals affirmed Appellant's conviction. *See* attached.

2. The petition for discretionary review is due on **December 3, 2015**.

3. For good cause, Appellant asks for an extension of 30 days until **January 2, 2016** to file the petition for discretionary review.

4. No previous extension to file the petition for discretionary review has been filed.

5. Appellant relies on the following facts as good cause for the requested extension: Attorney for Appellant just presented oral argument in the Court of Criminal Appeals in *State v. Hill III*, PD-0019-15, which is a complex, time-consuming case.

6. Further, Attorney for Appellant has the following briefs, petitions for discretionary review, or other pleadings due soon:

- *United States v. Wafer,* 15-50642, appellant's brief due in the 5th Circuit, November 12, 2015.

- *Collins v. State,* 08-15-00103-CR, Reply Brief due in the 8th Court of Appeals, November 18, 2015.

- *Geiger v. State,* 08-15-00213-CR, Appellant's Brief due in the 8th Court of Appeals, November 20, 2015.

- *United States v. Carroll,* 3:15-cv-03521-N, Brief in support of motion under 28 U.S.C. § 2255, due November 30, 2015.

- *Nguyen v. State*, 06-15-00127-CR, Appellant's Brief due in the 6th Court of Appeals, December 3, 2015.

7.     In addition, Attorney for Appellant has been working on two complex death penalty habeas cases - *Ex parte Thomas*, F86-85539, in the 194th Judicial District Court, and *Green v. Director*, 3:15-cv-02197-M-BH, in the Northern District of Texas.

8.     Finally, Attorney for Appellant continues work on several habeas cases involving the underlying issue in *Miller v. Alabama*, 132 S.Ct. 2455 (2012).

9.     This Motion is not filed for purposes of delay, but so that justice may be served.

## Prayer

Appellant prays that this Court grant this motion for an extension of time to file a petition for discretionary review.

Respectfully submitted,

3

Michael Mowla
P.O. Box 868
Cedar Hill, Texas 75106
Phone: 972-795-2401
Fax: 972-692-6636
Email: michael@mowlalaw.com
Texas Bar No. 24048680
Attorney for Appellant

/s/ **Michael Mowla**
Michael Mowla

### Certificate of Service

This certifies that on November 5, 2015, a copy of this document was served on Lori Ordiway and Lisa Smith of the Dallas County District Attorney's Office, Appellate Division, 133 N. Riverfront Boulevard, Dallas, Texas 75207 by email to lori.ordiway@dallascounty.org, lisa.smith@dallascounty.org, and DCDAAppeals@dallascounty.org; and also on Kimberly Duncan at Kimberly.Duncan@dallascounty.org; and on Lisa McMinn, the State Prosecuting Attorney, by email to Lisa.McMinn@spa.texas.gov, and John Messinger, Assistant State Prosecuting Attorney, by email to john.messinger@spa.state.tx.us. *See* Tex. Rule App. Proc. 9.5 (2015) and Tex. Rule App. Proc. 68.11 (2015).

/s/ **Michael Mowla**
By: Michael Mowla

4

**AFFIRM; and Opinion Filed November 3, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01297-CR

### TAMMY MORRIS LOWE, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 5
Dallas County, Texas
Trial Court Cause No. F13-00199-L**

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Lang-Miers

A jury convicted appellant, Tammy Morris Lowe, of manslaughter, found that she used her car as a deadly weapon during the commission of the offense, and assessed punishment at eight years' imprisonment and no fine.[1] For the reasons that follow, we affirm the judgment.

### BACKGROUND

Appellant, a 54-year-old school teacher of 25 years, was on her way home around 7:30 p.m. one Thursday in January 2013 after having volunteered at the school basketball game. She was driving southbound on North Carrier Parkway in the right-hand lane at or slightly above the posted speed limit (35 mph) as she approached the intersection with Holiday Hills. The weather was clear and dry, and traffic was light for the busy intersection.

---

[1] The State also charged appellant with failure to stop and render aid. Appellant pleaded guilty to that offense and the jury assessed punishment at ten years in prison; that judgment is not on appeal.

Six-year-old J and his mother, who was pushing J's little sister in a stroller, were walking back to their apartment from the Family Dollar store. They were waiting to cross the intersection of North Carrier Parkway and Holiday Hills. When the light turned green, they began to cross within the marked crosswalk. The "walking man" on the crosswalk sign started flashing and J's mother told J they "had to hurry." J "started running faster" within the crosswalk. He crossed the median and was several feet in front of his Mother and little sister on the southbound side of North Carrier Parkway. J's mother heard a car horn, heard J get hit, and saw him "in the air." Appellant had run the red light and struck J with her car. Appellant carried J on the hood of her car for 279 feet when she stopped (about two seconds after the impact) for about nine seconds. J fell off the hood of appellant's car and she drove off.

Two women witnessed the incident. One of the women was across the street filling up a water bottle at a water hut when she saw J and his family leaving the Family Dollar store. She saw them as they crossed the street. She saw a car that she thought was going "fast" run the red light and hit J after he crossed the median. She said the car "stopped just for a little while, just when the boy's body fell off the hood, then it continued driving off." She said she did not hear a car horn.

The other woman who witnessed the incident was traveling in the same direction as appellant and was waiting to turn left into a shopping center a distance away from the intersection where the incident occurred. Appellant's car was ahead of hers. She saw J and his mother pushing the stroller across the street, and she saw appellant's car approaching the intersection "at what [she] thought was a faster rate of speed." She said "[i]t didn't look like they were going to stop, so that's why I paid attention to that, specifically." She said the car "went through the intersection and hit the little boy . . . ." She said she "anticipate[d] seeing what was going to happen before it happened[.]" She saw the car stop "a little ways down" and

drive off again and "that's when [she] saw the little boy laying on the side of the road." She stopped in front of a gas station, ran to J, and administered CPR until the paramedics arrived. The paramedics tried without success to resuscitate J. He died from multiple blunt force injuries.

The school where the basketball game was being played was nearby, and the school resource officer heard about the incident. He went to the scene to determine whether he should redirect traffic from the basketball game. He told the traffic investigator that the high school had a video camera that looked at the street. The investigator obtained video surveillance from the school as well as the gas station across the street. After the State played the video surveillance footage of the incident, appellant conceded at trial that the light was red when she entered the intersection.

The investigation led police to look for a 2008 black Toyota Yaris. On the Tuesday after the incident, the school resource officer was asked to check on appellant because she had left her keys and a resignation letter at the school that morning. As he drove up to her house, he saw a black Scion parked in front with a damaged windshield. He said he knew the police "were looking for a black, small SUV-style vehicle" and he said "stuff started kind of making sense" because he also knew that appellant had worked at the basketball game the night of the incident and would have taken that route home around the time of the incident. He said he saw appellant at the basketball game and she did not appear impaired. The officer spoke with appellant and her husband at their home and left. He stopped at the end of the street and called the investigator.

The investigator and the traffic unit supervisor went to appellant's house in response to the school resource officer's telephone call. They did not see a Yaris. While still out, they received a call from the police station that appellant had come in to the police station to turn herself in. When they arrived at the station, the investigator learned that appellant owned a 2008

–3–

Yaris. He got a warrant to search appellant's property, found the Yaris, and towed it to the evidence garage.

Appellant did not testify during the guilt/innocence phase of trial. She testified during the punishment phase that she left the school, "turned onto Carrier and was driving home" and as she approached the intersection, "all of a sudden – all of a sudden – a child ran out. All I saw was a small figure." She said she "completely panicked. I had a panic attack." She said she immediately braked, but did not slam on the brakes and "was in shock" and afraid. She came to a stop and the child fell off the hood of her car. She said she "had no rational thought of what to do except, if I didn't flee, I was gonna die. In my head." She did not know why she thought she was going to die, but she agreed that she was "experiencing a fight or flight" response. She said she did not honk her horn as she entered the intersection. She drove around for about 15 minutes before going home. Over the next four days, she met with family members, worked on Monday, and got her affairs in order, all in preparation to turn herself in.

In one issue on appeal, appellant argues that the evidence is insufficient to support the manslaughter conviction.

### APPLICABLE LAW

A person commits manslaughter if she recklessly causes the death of an individual. TEX. PENAL CODE ANN. § 19.04(a) (West 2011). Reckless conduct in the manslaughter context means that the person "is aware of but consciously disregards a substantial and unjustifiable risk that . . . the result will occur." *Id*. § 6.03(c); *Gilbert v. State*, 196 S.W.3d 163, 166 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) ("manslaughter is a 'result-of-conduct' offense") (citing *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003)). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." TEX.

–4–

PENAL CODE ANN. § 6.03(c). "'At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct.'" *Trepanier v. State*, 940 S.W.2d 827, 829 (Tex. App.—Austin 1997, pet. ref'd) (quoting *Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975)).

## STANDARD OF REVIEW

We measure the sufficiency of the evidence by the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality opinion). We review the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011). The jury is the exclusive judge of the credibility and weight of the evidence and we defer to the jury's determination. *Wise*, 364 S.W.3d at 903.

Generally a person's mental state must be inferred from the circumstances, including the person's acts, words, and conduct. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978); *Griffith v. State*, 315 S.W.3d 648, 651–52 (Tex. App.—Eastland 2010, pet. ref'd). We must determine whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict. *Wise*, 364 S.W.3d at 903.

## DISCUSSION

Appellant challenges the sufficiency of the evidence to support the jury's finding that she acted recklessly. She conceded below that she ran the red light, but she argues that "there was no evidence presented showing why [she] ran the red light." She argues that there was no evidence she was impaired, distracted by a cell phone, or speeding, and, consequently, no evidence she was aware of a risk that her conduct created. And she contends that there must be more evidence

than simply running "a red light and nothing more" to show reckless conduct in the context of a manslaughter charge.

The indictment alleged several ways in which appellant acted recklessly: by disregarding a traffic control device, by failing to keep a proper lookout, and by failing to yield the right-of-way to a pedestrian in a marked crosswalk. Appellant's argument focuses on her conduct in running the red light and does not challenge the sufficiency of the evidence to support the other ways in which the indictment alleged she was reckless.

It is common knowledge that running a red light, failing to maintain a proper lookout, and failing to yield the right-of-way to a pedestrian in a marked crosswalk pose great risks to pedestrians crossing in marked crosswalks. *See Montgomery v. State*, 369 S.W.3d 188, 194 (Tex. Crim. App. 2012) ("common knowledge that failing to maintain a proper lookout and making an unsafe lane change without signaling . . . poses a great risk to other drivers"). Additionally, "anyone sharing the general community's sense of right and wrong would be aware of the seriousness of doing so." *See id.*

The evidence showed that on the night of the incident, the weather was clear and dry and traffic was light. Appellant worked at a nearby school and was familiar with the area. A motorist traveling behind appellant saw J crossing the intersection in front of his mother and perceived the risk that appellant was going to strike the child. The witness said she anticipated what happened before it happened. We conclude that any rational jury could have drawn the reasonable inference that if another motorist was aware of the substantial and unjustifiable risk of injury created by appellant's conduct, then appellant also was aware of the risk created by her conduct and that she consciously disregarded that risk. *See Griffith*, 315 S.W.3d at 652; *Trepanier*, 940 S.W.2d at 829–30. Additionally, J's mother testified that she heard a car horn just before J was hit. Appellant testified during the punishment phase that she did not honk her

–6–

horn before hitting J. But the jury did not have the benefit of appellant's testimony when it was determining guilt and could have reasonably inferred that appellant saw the child and honked her horn, supporting the reasonable inference that appellant was aware of the substantial and unjustifiable risk that she would strike the child and consciously disregarded it.[2] *See Griffith*, 315 S.W.3d at 652; *Trepanier*, 940 S.W.2d at 829–30.

Appellant hit J and did not stop until 279 feet later when she stopped for a few seconds, J's body fell off her hood, and she drove off. Evidence of flight is also a circumstance from which the jury could draw an inference of guilt and supports the jury's determination that appellant knew her conduct was reckless. *See Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994).

We conclude that the inferences necessary to establish appellant's guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict. *See Wise*, 364 S.W.3d at 903. We resolve issue one against appellant. Appellant raises sub-issues in her argument, but because of our disposition of the sufficiency issue, we do not need to reach those sub-issues.

## CONCLUSION

We affirm the trial court's judgment.


/Elizabeth Lang-Miers/

Do not publish          ELIZABETH LANG-MIERS
TEX. R. APP. P. 47.2(b)      JUSTICE

141297F.U05

---

[2] In contrast to her testimony during the punishment phase, appellant states in her appellate briefing that she "honked her horn when she saw [J], so it is clear that [she] was not asleep or in a complete daze when she entered into the intersection." This statement undermines appellant's sufficiency argument and, instead, supports the reasonable inference that she was aware of the risk because she honked her horn and consciously disregarded the risk when she did not attempt to apply her brakes before striking the child. Regardless, that evidence was not before the jury and we do not consider the statement in applying the legal standard. *See* TEX. PENAL CODE ANN. § 6.03(c) (person acts recklessly when person "is aware of but consciously disregards a substantial and unjustifiable risk that . . . the result will occur").



## Court of Appeals
## Fifth District of Texas at Dallas
# JUDGMENT

TAMMY MORRIS LOWE, Appellant

No. 05-14-01297-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 5, Dallas County, Texas

Trial Court Cause No. F13-00199-L.

Opinion delivered by Justice Lang-Miers.

Justices Bridges and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 3rd day of November, 2015.